John R. **LOVELESS**, Claude W. **Bowman** & John P. **Hall**, Plaintiffs-Appellees,

v.

**EASTERN AIR LINES, INC., et al.,** Defendants-Appellants,

**Charles G. Dyer, S. T. Belastock and George Smith,** Defendants-Appellants.

No. 80–5920.

United States Court of Appeals, Eleventh Circuit.

Aug. 2, 1982.

Gary Green, Legal Dept., Air Line Pilots Assoc., Int'l, Daniel S. Kozma, Washington, D. C., Manners, Amoon, Whatley & Tucker, George H. Tucker, Miami, Fla., for Charles G. Dyer et al.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, James E. Tribble, Todd A. Cowart, Miami, Fla., for Eastern Air Lines.

Robert E. Kusch, Vero Beach, Fla., for plaintiffs-appellees.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

The district court vacated the decision of an arbitration panel which denied supplementary retirement benefits to three employees of appellant, Eastern Airlines, Inc. (hereinafter "Eastern"). The court held that the panel had exceeded its jurisdiction by failing to apply unambiguous language in the collective bargaining agreement that clearly entitled the employees to benefits. We conclude that the district court erred in vacating the arbitral award, and we therefore reverse its judgment.

The dispute in this case centers around the interpretation of Eastern's retirement plan, established in 1947 as part of the collective bargaining agreement between Eastern and the Air Line Pilots Association (hereinafter "ALPA"). The retirement plan contains two definitions that are central to the determination of eligibility for benefits. Article I, section 1.15 of the plan defines "normal retirement age":

> "*Normal Retirement Age*" for any Participant means the 60th anniversary of his date of birth.

The plan then defines "normal retirement date" in Article I, Section 1.16:

> "*Normal Retirement Date*" means the first day of the month coinciding with or next following the Participant's attainment of his normal retirement age.

The interplay between these two sections creates two possible groups of employees for purposes of retirement eligibility. One group, consisting of employees whose birthday falls on the first of the month, becomes entitled to benefits immediately upon their sixtieth birthday. The remaining employees are not eligible for benefits until the first day of the month following their sixtieth birthday.

In 1977 Eastern and ALPA agreed to provide supplemental retirement benefits for various classes of employees. The plan amendment had an "effective date" of May 1, 1977 and specifically provided increased benefits for employees "who have a 'normal retirement date' on or after May 1, 1977."

The appellees in this case, three retired pilots covered under the plan, became sixty years old after April 1, 1977 and before May

1, 1977.[1] According to the terms of Article I, sections 1.15 and 1.16, their normal retirement date was May 1, 1977. Under the plain meaning of the language of the amendment, therefore, they were entitled to supplemental retirement benefits.

Eastern, however, refused to pay appellees the supplemental benefits. It claimed that the intent of the company and the union was to grant the benefits to employees who became sixty years old on or after the effective date of the amendment, May 1, 1977. This dispute was referred to an arbitration panel created by Article X of the retirement plan[2] and empowered by Article XI to resolve all disputes arising under the plan.[3] The panel, consisting of two members chosen by Eastern and two members chosen by ALPA, heard extensive evidence concerning the intent of the negotiators of the 1977 amendment. The evidence included actuarial projections used by the negotiators to determine the cost of the supplemental benefits that took into account only those pilots who would become sixty on or after May 1, 1977.[4] The arbitration panel found unanimously that the three Eastern pilots were not entitled to supplemental benefits.[5]

Eastern conceded that the express language of the contract supported the pilots' position, but argued that the labor arbitrators could apply the true intent of the parties to the agreement which was at variance with the contract's language. To substantiate its argument about the parties' intent, Eastern called four witnesses. L.C. Transou testified that none of the individuals who were principally responsible for drafting the plan amendment was an attorney. He also stated that appellees were not considered in calculating the projected cost of the amendment. Derek Tyler, Eastern's manager of pension administration, testified that eight pilots who had reached retirement age in the month preceding the effective date of a retirement plan amendment did not receive the increased benefits provided for in those amendments.

During the second day of the hearing, James Armstrong, Eastern's actuary, testified that projections of the cost of various plan amendments had historically excluded pilots who turned sixty prior to the effective dates of the amendments. Leo Daub, a retirement specialist employed by ALPA, corroborated Armstrong's testimony, but opined that the express language of the plan should determine eligibility.

1. Appellees Loveless, Bowman, and Hall became 60 years old respectively on April 4, 1977, April 24, 1977, and April 18, 1977.

2. Article 10 of the retirement plan provides, in pertinent part:

There shall be established a Retirement Board (hereinafter referred to as the "Board") consisting of four members, two of whom shall be selected by Eastern and two of whom shall be selected by the Association. Eastern shall establish its own rules for the selection of the members of the Board to be selected by it and the Association shall likewise establish its own rules for the selection of the members of the Board to be selected by it.

3. Article 11 of the retirement plan provides, in pertinent part:

All disputes concerning the application, interpretation or administration of the Plan in respect to individual employees and their participation in or their benefits under the Plan shall be heard and determined by the Retirement Board.

All decisions and actions taken by the Retirement Board under this Article XI shall be by the affirmative vote or agreement of not less than three members. Such affirmative vote or agreement shall be in writing if given other than during a meeting of the Retirement Board. All determinations by the Retirement Board of disputes ... shall be final and binding upon Eastern, the Association and any other person having an interest in, under or derived from the Plan.

4. The arbitration panel conducted two days of hearings. Both sides were represented by attorneys. The attorney for the pilots relied upon the express language of the agreement and argued that under common law rules of contract interpretation, clear contract language cannot be "interpreted" beyond its common meaning absent mutual mistake or ambiguity.

5. The retirement board held:

A. C.W. Bowman, J.F. Hall, and J.R. Loveless retired as pilots in the service of Eastern Air Lines at various dates in April 1977.

B. The Eastern Air Lines Fixed Benefit Retirement Income Plan for Pilots was amended with an effective date of May 1, 1977 by Document 59 of the Collective Bargaining Agreement between Eastern Airlines, Inc. and the Air Line Pilots Association.

C. The language of the Document 59 amendment to the plan provides pilots in the service of Eastern on May 1, 1977 and thereafter with the revised benefits claimed in this instance.

## I. STATUTORY BACKGROUND

Eastern is an air carrier operating in interstate commerce and is therefore covered by provisions of the Railway Labor Act, 45 U.S.C. §§ 151–188. *See* 45 U.S.C. § 181; *I.A.M. v. Central Airlines, Inc.*, 372 U.S. 682, 685, 83 S.Ct. 956, 958, 10 L.Ed.2d 67 (1963). The arbitration panel is a system adjustment board created by the parties to the collective bargaining agreement. *See* 45 U.S.C. § 184; *Reed v. National Air Lines, Inc.*, 524 F.2d 456, 459 (5th Cir. 1975); *de la Rosa Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29, 31 (1st Cir. 1978). A court may overturn the decision of an airline system adjustment board only on the basis of one of the grounds listed in 45 U.S.C. § 153 First (q).[6] *See Singer v. Flying Tiger Line, Inc.*, 652 F.2d 1349, 1355–56 (9th Cir. 1981); *Northwest Airlines, Inc. v. Air Line Pilots Association International*, 530 F.2d 1048, 1050 & n.9 (D.C.Cir.), *cert. denied*, 426 U.S. 942, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

## II. STANDARD OF REVIEW OF ARBITRAL DECISIONS

The exceedingly narrow scope of judicial review of labor arbitration decisions is tailored to suit the vital role that the arbitrator plays in the scheme of federal labor law. Not only is the arbitrator himself a linchpin of the ongoing collective bargaining relationship, the expeditiousness and the finality of the arbitration process serve to defuse the chronic crises that inhere in the labor setting and thereby prevent these crises from developing into labor unrest. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–81, 80 S.Ct. 1347, 1350–52, 4 L.Ed.2d 1409 (1960). To the extent that the courts intrude into this scheme, they detract both from the central role of the arbitrator and the palliative effect of the arbitration process. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598–99, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960).

In recognition of the limited judicial role in the arbitration process, courts have typically confined their scrutiny of awards to the broad contours of procedural fairness and arbitral impartiality. *See, e.g.*, 45 U.S.C. § 153 First (q); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Sam Kane Packing Co. v. Amalgamated Meat Cutters*, 477 F.2d 1128 (5th Cir.), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed.2d 237 (1973); *Bieski v. Eastern Automobile Forwarding Co.*, 396 F.2d 32 (3d Cir. 1968). *Cf.* United States Arbitration Act, 9 U.S.C. § 10 (commercial arbitration awards can be vacated, *inter alia*, for corruption or fraud, evident partiality of the arbitrator, and prejudicial misbehavior of the arbitrator).[7]

---

D.  The claimants were not in the employ of Eastern Air Lines as pilots on the effective date of the amendment to the Plan. This finding is supported by the lack of ability to continue to earn wages as a pilot due to Federal Aviation Administration's rulings; the cessation of loss-of-license insurance coverage on the 60th birthday of each claimant through contractual negotiations, the commencement of ERISA joint and survivor options as a retiree upon the attainment of age 60 by each claimant.

6.  45 U.S.C. § 153 First (q) provides in pertinent part:

> The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the divisions' jurisdiction, or for fraud or corruption by a member of the division making the order.

7.  By its terms, the United States Arbitration Act applies principally to commercial arbitration and does not apply to employment contracts in the railroad industry. *See* 9 U.S.C. § 1. Although the underlying policy of commercial arbitration differs from that of labor arbitration, *see United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960), principles favoring finality in commercial arbitration carry over into the labor sphere, *see Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1130–31 (3d Cir. 1972); *Textile Workers Union v. American Thread Co.*, 113 F.Supp. 137, 142 (D.Mass.1953).

It is thus firmly established that courts will not review the substance of a labor arbitration award for ordinary error and that courts will not vacate an award because a judge might have reached a different result. *See Safeway Stores v. American Bakery Workers, Local 111*, 390 F.2d 79, 82–83 (5th Cir. 1968); *Francesco's B., Inc. v. Hotel Employees Union, Local 28*, 659 F.2d 1383, 1388–89 (9th Cir. 1981); R. Gorman, Basic Text on Labor Law 585–86 (1976). *See also* S.Rep.No.1201, 89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 U.S.Code Cong. & Ad. News 2285, 2287 (Senate Labor Committee rejected version of Railway Labor Act that would have permitted courts to vacate arbitral awards on grounds of "arbitrariness or capriciousness").

The substantive grounds for vacating labor arbitral awards that do exist are extremely narrow. In the railway labor field, 45 U.S.C. § 153 First (q) provides that an arbitral award may be vacated for failure "to conform, or confine itself, to matters within the scope of the division's jurisdiction." *See also* 9 U.S.C. § 10 (commercial arbitration award can be vacated when arbitration panel exceeds its jurisdiction). The courts have determined that this provision of section 153 is, in effect, a statutory codification of certain substantive grounds that would justify the vacation of an arbitral award in other areas of labor law. *See Brotherhood of Railroad Trainmen v. Central of Georgia Ry.*, 415 F.2d 403, 410 (5th Cir. 1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970). As exposited by the courts, there appear to be three interrelated grounds for such substantive review of arbitral awards:

(1) whether the award is irrational, *see, e.g., Gunther v. San Diego & Arizona E. Ry.*, 382 U.S. 257, 261, 86 S.Ct. 368, 370, 15 L.Ed.2d 308 (1965) ("wholly baseless and completely without reason"); *Safeway Stores v. American Bakery Workers, Local 111*, 390 F.2d at 82 ("if . . . no judge, or group of judges, could ever conceivably have made such a ruling"); S.Rep.No.1201, *supra*, at 3, *reprinted in* 1966 U.S.Code Cong. & Ad.News, at 2287 ("actually and indisputably without foundation in reason or fact");

(2) whether the award draws its essence from the letter or purpose of the collective bargaining agreement, *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361; *see Brotherhood of Railroad Trainmen v. Central of Georgia Ry.*, 415 F.2d at 412 (arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement"); St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at* Enterprise Wheel *and its Progeny*, 75 Mich.L.Rev. 1137, 1147 (1977); and

(3) whether the arbitrator conformed to a specific contractual limitation upon his authority, *see, e.g., Magnavox Co. v. International Union of Electrical Workers*, 410 F.2d 388, 389 (6th Cir. 1969); *Torrington Co. v. Metal Products Workers Union Local 1645*, 362 F.2d 677, 680 (2d Cir. 1966); *Textile Workers Union v. American Thread Co.*, 291 F.2d 894, 899–900 (4th Cir. 1961).

Although these interrelated grounds for substantive review share a basic concern that the arbitrator perform his contractually mandated role in a conscientious and responsible fashion,[8] the third ground for review, that based upon specific contractual limitations, will not be equally applicable to every contract. *See* St. Antoine, *supra*, at 1142. Given the free play of the collective

---

8. The three stated grounds do not represent hard and fast alternative bases for the review of an arbitrator's award. Rather, they represent different emphases that are more or less relevant given the factual situation of a certain case. In some cases, more than one basis will be directly relevant. *See, e.g., Local 342, U.A.W. v. TRW, Inc.*, 402 F.2d 727, 730–32 (6th Cir. 1968) (where arbitrator modified agreement despite the presence of a clause in the contract that specifically prohibited him from doing so, the award did not draw its essence from the collective bargaining agreement), *cert. denied*, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969).

Another ground of substantive review that is seldom invoked by the courts involves arbitral awards that violate law or public policy. *See* R. Gorman, *Basic Text on Labor Law* 593–98 (1976).

bargaining process, the parties to the contract could expressly grant the arbitrator power virtually to rewrite portions of the agreement, or expressly confine his authority within extremely narrow bounds.[9] *See* R. Gorman, *supra*, at 586–93. As a practical matter, the most prevalent modification of arbitral authority is a contractual clause prohibiting the arbitrator from "adding to, subtracting from, or modifying the agreement in any way." *See W. R. Grace & Co. v. Local Union No. 759, United Rubber Workers*, 652 F.2d 1248, 1254 (5th Cir. 1981) (citing 2 BNA, Negotiations and Contracts ¶ 51:281), *cert. granted,* —— U.S. ——, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982).[10]

The collective bargaining agreement at issue in this case contains no such express constraint on the authority of the arbitrator to interpret the agreement.[11] *See also Syufy Enterprises v. Northern California State Association of IATSE Locals*, 631 F.2d 124, 126 n.1 (9th Cir. 1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981); *Federated Employers of Nevada, Inc. v. Teamsters, Local 631*, 600 F.2d 1263, 1264–65 (9th Cir. 1979); *I.A.M., District No. 8 v. Campbell Soup Co.*, 406 F.2d 1223, 1226–27 (7th Cir.), *cert. denied*, 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969); *Truck Drivers Local Union No. 100 v. Quick-Freeze Cold Storage, Inc.*, 375 F.Supp. 725, 729 (S.D.

---

**9.** *Compare W. R. Grace & Co. v. Local Union No. 759, United Rubber Workers*, 652 F.2d 1248, 1254 (5th Cir. 1981) (arbitration clause confines arbitrator's authority exclusively to apply the "express" terms of the contract), *cert. granted,* —— U.S. ——, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982) *with Holly Sugar Corp. v. Distillery Workers Int'l Union*, 412 F.2d 899, 905–06 (9th Cir. 1969) (arbitration clause specifically authorizes arbitrator to add new job classifications) *and Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber Workers*, 77 Lab. Cases (CCH) ¶ 10,984, at 19,337 & n.2 (Ohio 1975) (arbitration clause specifically authorizes arbitrator to modify agreement "where necessitated by federal or state statute or regulation").

**10.** The courts have not entirely agreed on the degree to which a standard "no modification clause" restricts the authority of the arbitrator to go beyond the express terms of the contract. The case most often cited for the proposition that such a clause places significant restraint upon an arbitrator's authority is *Torrington Co. v. Metal Prods. Workers Union Local 1645*, 362 F.2d 677 (2d Cir. 1966). The *Torrington* opinion has been the subject of incisive criticism in legal commentary, *see, e.g.,* Aaron, *Judicial Intervention in Labor Arbitration*, 20 Stan.L.Rev. 41 (1967), and one court has disapproved of the decision to the extent that it relied upon the dissent in *Torrington* for the correct statement of the law, *see Holly Sugar Corp. v. Distillery Workers Int'l Union*, 412 F.2d 899, 905 (9th Cir. 1969). Our binding precedent from the former fifth circuit, *see Bonner v. City of Prichard*, 661 F.2d 1206, 1207–08 (11th Cir. 1981) (en banc), has read the *Torrington* decision narrowly and has not been apt to view the standard "no modification clause" as a tremendous constraint upon the authority of the arbitrator. *See, e.g., United Steelworkers v. United States Gypsum Co.*, 492 F.2d 713, 731 (5th Cir.), *cert.*

denied, 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974) (citing *Holly Sugar* as correct statement of the law); *Dallas Typographical Union No. 173 v. A.H. Belo Corp.*, 372 F.2d 577, 583 (5th Cir. 1967) (*Torrington* should be "carefully confined lest, under the guise of the arbitrator not having 'authority' to arrive at his ill-founded conclusions of law or fact, or both, the reviewing-enforcing court takes over the arbitrator's function"). *See also Lodge No. 12, I.A.M. v. Cameron Iron Works, Inc.*, 292 F.2d 112, 118 (5th Cir.) ("no modification clause" does not prevent an arbitrator from finding rights implied though not expressed in the collective bargaining agreement), *cert. denied*, 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961).

Labor arbitrators and treatise writers appear to disagree about the significance of the "no modification clause." *Compare National Can Corp.*, 77 Lab.Arb. (BNA) 405, 407 (1981) (Boner, Arb.) (no modification clause "prevent[s] an Arbitrat[or] from 'legislating' in the performance of his role") *and* F. Elkhouri, *How Arbitration Works* 363 (3d ed. 1973) ("the general denial of power to add to, subtract from, or modify the agreement provides special justification for the observance of the parol-evidence rule by arbitrators") *with Braniff Airways, Inc. and International Pilots Ass'n*, 70–1 Lab.Arb. Awards (CCH) ¶ 8214, at 3706 (1969) (Platt, Arb.) (arbitrator may use evidence of past practice to amend agreement despite existence of "no modification clause") *and* R. Gorman, *Basic Text on Labor Law* 593 (1976) ("If the arbitrator in deciding the dispute has recourse only to the writing, to negotiations and to plant practices, it is doubtful that the award 'adds to or modifies' the labor agreement").

**11.** The collective bargaining agreement actually goes so far as to confer upon the retirement board ongoing oversight authority with respect to the retirement system. Article 10.6.

Ohio 1974). Also, neither party suggests that the award is irrational. Therefore, the only substantive ground of review relevant to this case is whether the award draws its essence from the collective bargaining agreement.[12]

### III. REVIEW OF THE ARBITRAL AWARD

■ In this case, the superficially clear and unambiguous terms of the collective bargaining agreement entitled the three pilots to enhanced retirement benefits. The arbitrators went behind the contractual language to reach the opposite result based upon the panel's perception of the true intent of the parties to the collective bargaining agreement.

**12.** Neither party has suggested, and we do not find, any defect in the arbitral process or any evident partiality on the part of the panel. Accordingly, our *only* ground of review in this case is the substantive inquiry into whether the award draws its essence from the collective bargaining agreement.

**13.** But cf. *Eastern Air Lines, Inc. v. Air Line Stewards Ass'n Local 550*, 384 F.Supp. 1300, 1303 (S.D.Fla.1974) (court assumes that arbitrators could resort to bargaining history, but finds the arbitrators' reading of that history to be erroneous).

**14.** In support of their argument, appellees rely heavily upon a line of cases represented by *Monongahela Power Co. v. Local No. 2332, I.B.E.W.*, 566 F.2d 1196 (4th Cir. 1976). In that case, the arbitrator modified a clear and unambiguous portion of the collective bargaining agreement. The court noted that the contract contained a clause explicitly prohibiting the arbitrator from adding to, detracting from, or altering the express terms of the collective bargaining agreement. *Id.* at 1198–99 & n.4. The court vacated the award because the arbitrator had disregarded this contractual constraint upon his authority. *Id.* at 1200.

*Monongahela* clearly falls within the *Torrington* line of cases. *See supra* note 10. Unlike this case, the collective bargaining agreement in *Monongahela* contained an express limitation on the arbitrator's authority. It was because of that limitation that the arbitrator was obliged to find an ambiguity before he could rely upon evidence extrinsic to the express terms of the agreement. *See Syufy Enters. v. Northern Cal. State Ass'n of IATSE Locals*, 631 F.2d 124, 126 n.1 (9th Cir.) (distinguishes cases in which contract contained "no modification clause" and arbitrator therefore was obliged to discover ambiguity), *cert. denied*, 451 U.S. 983,

Appellees do not argue that the arbitrators were factually incorrect in their finding that the true intent of the parties was to exclude the pilots from supplemental benefits. Indeed, such an argument could hardly prevail in this court. *See Safeway Stores v. American Bakery Workers, Local 111*, 390 F.2d at 83–84.[13] Rather, appellees contend that arbitrators may not go beyond the express terms of the collective bargaining agreement unless those terms evince a facial ambiguity. Phrased another way, appellees argue that unless the arbitrator adheres to the facially unambiguous language of the collective bargaining agreement, the arbitrator's award does not draw its essence from the collective bargaining agreement.[14]

101 S.Ct. 2314, 68 L.Ed.2d 839 (1981). *See also Boise Cascade Corp. v. United Steelworkers, Local 7001*, 588 F.2d 127, 129 (5th Cir.), *cert. denied*, 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979); *Local 342, U.A.W. v. TRW, Inc.*, 402 F.2d 727, 730–31 (6th Cir. 1968), *cert. denied*, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969); *Aeronautical Machinists Lodge 709 v. Lockheed-Georgia Co.*, 521 F.Supp. 1327, 1329–30 (N.D.Ga.1981).

*Monongahela*, like *Torrington*, was thus principally concerned with a ground of substantive review that is not strictly relevant in this case; namely, whether the arbitrator conformed to a specific contractual limitation upon his authority. In this case, where the authority of the arbitrator is not expressly limited, our review of his award is confined to the inquiry whether the award draws its essence from the letter or purpose of the collective bargaining agreement. *See I.A.M., District No. 8 v. Campbell Soup Co.*, 406 F.2d 1223, 1226 (7th Cir.), *cert. denied*, 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969); *Truck Drivers Local Union No. 100 v. Quick-Freeze Cold Storage, Inc.*, 375 F.Supp. 725, 729 (S.D.Ohio 1974); R. Gorman, *Basic Text on Labor Law* 591 (1976). *Cf. Eastern Air Lines, Inc. v. Transport Workers Union, Local 553*, 580 F.2d 169, 172 nn. 9 & 10 (5th Cir. 1978) (notes but does not decide question whether arbitrator who relied principally upon bargaining history failed to draw the essence of his award from the collective bargaining agreement); *Syufy Enters. v. Northern Cal. State Ass'n of IATSE Locals*, 631 F.2d at 126 (reserves question whether an arbitrator interpreting an agreement that does not contain a "no modification clause" may rely upon negotiating history to supersede express provision of collective bargaining agreement).

If the collective bargaining agreement in this case did contain a "no modification clause,"

In order to evaluate appellees' argument, it is necessary to examine the "essence" test set out by the Supreme Court in *Enterprise Wheel*. In that case, the Court stated:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597, 80 S.Ct. at 1361. The Court suggested by way of example that an award "based solely upon the arbitrator's view of the requirements of enacted legislation" would fail to draw its essence from the contract. *Id.*

The interdiction contained in *Enterprise Wheel* has been invoked in a number of contexts. For example, in *W. R. Grace & Co. v. Local Union No. 759, United Rubber Workers*, 652 F.2d at 1255, the former fifth circuit determined that an arbitrator exceeded his jurisdiction by basing his award solely upon his perception of the equities of the situation without even referring to the collective bargaining agreement. In *Detroit Coil Co. v. I.A.M., Lodge 82*, 594 F.2d 575, 581 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979), the court vacated the award of an arbitrator who refused to apply a clear contractual time limit upon the filing of grievances because, *inter alia*, application of the clause might hurt the good relations that existed between the employer and the union. Additionally, in *Textile Workers Union v. American Thread Co.*, 291 F.2d at 900–01, the court vacated an award that ignored the collective bargaining agreement and took as authority an unrelated arbitral decision.

These cases fit into a common pattern in which the arbitrator decides a matter according to a standard that reflects neither the language of the collective bargaining agreement nor the intent of the parties as embodied in the agreement. He thereby dispenses his own brand of industrial justice rather than the brand chosen by the parties that he was commissioned to dispense. *Cf.* St. Antoine, *supra*, at 1142 (arbitrator is official reader of collective bargaining agreement, so scope of judicial review should be determined by particular collective bargaining agreement involved).

It is immediately evident that the award in this case does not fit into the typical pattern of awards that fail the "essence" test. In this case, the arbitrators are not faulted for disregarding the intent of the parties to the collective bargaining agreement and thereby dispensing their "own brand of industrial justice." Rather, they are faulted for taking the original intent of the parties so seriously that they went behind ostensibly unambiguous language in the contract [15] to determine precisely what the original intent was. We cannot conclude that such an award fails to draw its essence from the letter or purpose of the collective bargaining agreement.

In construing any contract, including a collective bargaining agreement, determining the intent of the parties is the essential inquiry. *See Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1131 (3d Cir. 1969). Although that intent will generally be discernible from the express words of a collective bargaining agreement, *see Torrington Co. v. Metal Products Workers Union Local 1645*, 362

our result would not necessarily be different. An arbitrator may be able to discern a latent ambiguity in a contract based upon his examination of past practice or bargaining history even though no ambiguity appears on the face of the contract. The arbitrator might then be able to resolve the latent ambiguity by resort to permissible sources of extrinsic evidence. *See, e.g., U.A.W. v. White Motor Corp.*, 505 F.2d

1193, 1198–99 (8th Cir. 1974), *cert. denied*, 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975); *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1130 & n.31 (3d Cir. 1969). *See also* A. Corbin, *Contracts* §§ 542–43 (one vol. ed. 1952).

15. *See supra* note 14.

F.2d at 681, we cannot always be certain that this is so. As stated by the Supreme Court, the collective bargaining agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 578, 80 S.Ct. at 1350.[16] Accordingly, absent some express restriction upon the arbitrator's authority, the arbitrator is not limited to the bare words of the agreement and common law rules for the interpretation of private contracts. *Gunther v. San Diego & Arizona E. Ry.*, 382 U.S. at 261, 86 S.Ct. at 370. *See* St. Antoine, *supra*, at 1147.

■ An arbitrator does not violate his duty to draw the essence of his award from the letter or purpose of the collective bargaining agreement when he relies upon any of several aids to construe the intent of the parties in addition to the express terms of the contract. These extrinsic aids include the past practice of the parties, *see, e.g., United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 581–82, 80 S.Ct. at 1352–53; *Boise Cascade Corp. v. United Steelworkers, Local Union No. 7001*, 588 F.2d 127, 129–30 (5th Cir.), *cert. denied*, 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979), bargaining history, *see, e.g., Francesco's B., Inc. v. Hotel Employees, Local 28*, 659 F.2d at 1389; *U.A.W. v. White Motor Corp.*, 505 F.2d 1193, 1198–99 (8th Cir. 1974), *cert. denied*, 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975), relevant legislation to the extent that it is probative of the "sense of the agreement," *see, e.g., United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597–98, 80 S.Ct. at 1361; *Marble*

*Products Co. v. Local 155, United Stone Workers*, 335 F.2d 468, 472 (5th Cir. 1964), and industrial efficiency considerations "insofar as the collective bargaining agreement permits," *see, e.g., United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct. at 1352; *Truck Drivers Local Union No. 100 v. Quick-Freeze Cold Storage, Inc.*, 375 F.Supp. at 730.

In this case, the arbitration clause of the collective bargaining agreement contained no express limitations upon the authority of the arbitrators to interpret the agreement. The arbitrators relied upon probative evidence of bargaining history to determine that the parties did not intend that employees in appellees' position would receive enhanced retirement benefits. Perhaps this is not the result that a judge, applying ordinary principles of contract construction, would have reached. In light of our narrow standard of review of arbitral awards, however, that fact is totally irrelevant. *Safeway Stores v. American Bakery Workers, Local 111*, 390 F.2d at 83–84. The arbitration panel, composed of designees of both Eastern and ALPA, reached that result on the basis of a construction of the collective bargaining agreement that comported with the essence of the agreement. It was the responsibility of the district court to affirm the award.

REVERSED AND REMANDED.

---

16. *See also* Cox, *Reflections Upon Labor Arbitration*, 72 Harv.L.Rev. 1482, 1498–99 (1959):

First, it is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded. There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words.

(footnote omitted).