The **FOLGER COFFEE COMPANY,**
**Plaintiff–Appellant,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA–UAW, LOCAL UNION NO. 1805, Defendants–Appellees.**

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA–UAW, LOCAL UNION NO. 1805, Plaintiffs–Appellees.**

v.

The **FOLGER COFFEE COMPANY,**
**Defendant–Appellant.**

**No. 89–3082.**

United States Court of Appeals,
Fifth Circuit.

July 11, 1990.

Harold S. Freeman, Jeffrey S. Shoskin, Dinsmore & Shol, Cincinnati, Dominic J. Gianna, Alan Dean Weinberger, Middleberg, Riddle & Gianna, New Orleans, La., for the Folger Coffee Co.

James E. Youngdahl, Deborah A. Jeon, Little Rock, Ark., William Lurye, Metairie, La., for Intern. Union, United Auto., Aerospace & Agricultural Implement Workers of America.

Before BROWN, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The Folger Coffee Company (Folger) appeals the district court's grant of summary judgment which upheld an arbitration

award in favor of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America–UAW (Union). We conclude that the arbitration award draws its essence from the collective bargaining agreement and consequently we affirm.

### Union Unhappy when Folger Contracts Out Yardwork

In April, 1984, Folger and the Union entered into a collective bargaining agreement. The Union is the exclusive collective bargaining agent for employees at Folger's New Orleans facility.

In 1986, the Union filed a grievance which contended that Folger had violated the collective bargaining agreement. Specifically, the Union challenged Folger's subcontracting of yard work to a professional landscaping company. Until 1986, the yard work at the New Orleans plant had been performed exclusively by bargaining unit employees. Folger based its decision to subcontract on the following factors: dissatisfaction with the yard's appearance, staffing problems, recognition that the skills needed for yard work were not compatible with the skills associated with coffee production, and cost savings.

In accordance with the agreement's grievance procedure, Folger and the Union submitted their dispute to final and binding arbitration. The Board of Arbitration was asked to resolve the following jointly stipulated submission:

Did Management violate the contract, Article II, Recognition; Article X, Senior-

ity; Article XI, Managements Rights; by subcontracting yard work which had previously been performed within the bargaining unit? If so, what shall be the remedy?

The arbitration panel sustained the Union's grievance and ordered Folger to return the yard maintenance work to the bargaining unit employees. The panel reasoned that despite language in the agreement which granted Folger the power to subcontract, Folger's right was not absolute. Because union members traditionally performed the yard work and had the necessary skills and tools to perform the job, the panel concluded that Folger violated articles II,[1] X,[2] and XI [3] of the bargaining agreement. Folger brought suit in the District Court to vacate the arbitration award. The district court granted summary judgment in favor of the Union and ordered enforcement of the award. We affirm.

### How Do We Decide?

The sole issue before this court is whether the arbitration award in favor of the Union should be enforced. Thirty years ago, in what has come to be known as the *Steelworker's* trilogy,[4] the United States Supreme Court severely restricted judicial review of arbitration awards. The Court dictated, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the

1. Article II states:

   The Company recognizes the Union as the exclusive bargaining representative for all persons employed by the Company ... in maintenance work including ... custodians.... The only purpose or intent of this article is to recognize the Union and the persons it represents.

2. Article X of the agreement details the parties' rights with respect to seniority.

3. Article XI of the agreement mandates:

   The Company shall continue to have all the rights which it had prior to the employees' selection of the Union as the collective bargaining agent, *except those that are specifically*

given up or modified by the express written terms of the Agreement. Included in the rights reserved to the Company *except where they are given up or modified* by any the of the express written provisions of this Agreement are ... the *determination of the nature and extent of work,* if any, to be *contracted or transferred out* and the persons, means and methods to be so utilized.

4. The *Steelworker's* trilogy consists of *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

final say on the merits of the awards." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424, 1427 (1960).

■ An arbitrator's power, however, is not boundless. The award is legitimate only if it "draws its essence from the collective bargaining agreement." *Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428. An award draws its essence from the agreement so long as it is "rationally inferable" in "some logical way" from the agreement. *International Chemical Workers Union v. Day & Zimmermann, Inc.*, 791 F.2d 366, 369 (5th Cir.1986), *cert. denied*, 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986).

The Supreme Court recently reiterated its extremely deferential stance towards arbitration awards in *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Although the unanimous Court conceded that the arbitrator may not ignore the plain language of the contract, they declared that a court could not reject an award on the ground that the arbitrator misread the contract, because the parties have authorized the arbitrator to give meaning to— that is, *read* the language of the agreement. The Court stated, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of this authority, that a court is convinced the arbitrator committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38, 108 S.Ct. at 366, 98 L.Ed.2d at 299.

### Does Award Meet "Essence" Standard?

■ Folger claims that because the arbitrators violated the express words of the contract, the award is not final and binding on the company.[5] Folger reads the management rights provision, article XI, of the contract as granting it an absolute right to contract out any or all work.[6] By imposing "phantom" conditions on Folger's ability to subcontract and ignoring the plain and unambiguous provisions in the agreement, Folger contends that the arbitrators substantially modified and altered the agreement's unconditional subcontracting language. Therefore, they conclude that the award fails to draw its essence from the collective bargaining agreement.

Because the stipulated submission referred only to Articles II, X, and XI, Folger argues that the arbitrators were forced to base their decision solely upon these three stated contractual provisions. However, the subcontracting provision itself makes it necessary for the arbitrators to construe its language in the context of the agreement as a whole. The subcontracting clause reserves for management the right to subcontract, except when this right is given up or modified by the express written terms of the collective bargaining agreement.[7] This exception forces the arbitrators to look to provisions, other than those specified in the submission, and to determine whether these provisions have in any way modified or eliminated management's right to subcontract.

The Supreme Court has held that not only are arbitrators entitled to study the entire contract, but that they may refer to other sources of law for guidance. In the 1960 *Steelworkers* Trilogy,[8] the Supreme Court reasoned:

> The collective bargaining agreement ... is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.... It calls into being a new common law—the common law of a particular industry or of a particular plant....

---

5. Article VI of the collective bargaining agreement provides that if the arbitrators' "decision is in conformity with the powers granted to the Board of Arbitration, it shall be final and binding...." Furthermore, the agreement stated:
   The sole function of the Board of Arbitration shall be to interpret only the written provisions of the this Agreement and apply them to the specific facts.... The Board of Arbitra-

tion shall have no power or authority to change, amend, modify, add to, delete from, or otherwise alter this Agreement.

6. Article XI, *supra* note 3.

7. *Id.*

8. *Steelworker's* trilogy, *supra* note 4.

Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement.... The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*Manville Forest Products Corp. v. United Paperworkers Int'l Union,* 831 F.2d 72 (5th Cir.1987) (*quoting United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578–83, 80 S.Ct. 1347, 1351–52, 4 L.Ed.2d 1409, 1415–16 (1960)).

In *Manville Forest Prod.,* 831 F.2d at 72, this court upheld an award where the arbitrator looked outside the agreement and relied on past dealings between the parties in deciding that the company could not eliminate a position, even though the contract was silent on the matter. Furthermore, some courts have confirmed awards where the arbitrators had relied on past practice, even though past practice contradicted written contract provisions. In *Loveless v. Eastern Air Lines,* 681 F.2d 1272 (11th Cir.1982), the arbitrators denied retirement benefits to certain employees, although the workers met the contract's express eligibility requirements. The court concluded that the award did not fail to draw its essence from the agreement, even though the arbitrators "went behind ostensibly unambiguous language in the contract." *Id.* at 1279.

Similarly, the arbitration panel in the instant case considered the subcontracting language itself insufficient to enable them to render a decision, and looked beyond the stipulated submission. The panel first recognized that the subcontracting clause did not grant Folger a carte blanche right to contract out work that has been historically performed by Union employees. The panel opinion quoted Elkouri and Elkouri, *How Arbitration Works,* 540 (4th Ed.1985), for the proposition that in the absence of specific contractual language, the decision to subcontract must be made in good faith, represent a reasonable business decision, and not result in a subversion of the collective bargaining agreement or a serious weakening of the bargaining unit. The panel read the contract to accord Folger the right to contract out when the existing workforce lacks either the expertise or necessary tools to perform the work. Because the union workers possessed the skills and tools to perform the yard work, the panel concluded that the subcontract to the professional landscaping company violated the collective bargaining agreement.

Although the panel quoted Elkouri, this interpretation could very easily have been derived from Article I of the agreement. Article I states that the purpose of the agreement is to promote, improve, and strengthen the relationship and good will between the Company, the employees, and the Union. A corollary to Article I is that subcontracting can not be used to undermine the Union where the bargaining relationship is already established. Article I therefore constitutes a limitation upon the Company's right to contract out. Absent a specific provision which completely and explicitly entitles the Company to contract out regardless of its effect on the bargaining unit, a reasonable interpretation of the contract is that subcontracting must be balanced against the rights of the employees, the Company, and the Union. The subcontracting clause is neither specific nor unambiguous. Thus, the arbitration panel was entitled to study the other provisions of the agreement, as well as consider other information, such as past practice, which was an integral element in the clause, the continued strength of the bargaining unit, and the company's reasonable business needs. Folger places emphasis on the fact that the arbitration panel did not expressly find any of the stipulated provisions ambiguous. However, arbitrators need not explicitly state that they find a clause ambiguous; nor would they lack the power, as courts frequently do, to construe and apply perfectly unambiguous terms of a contract. Arbitrators must only show that the award is "rationally inferable" in "some logical way" from the agreement.

In conclusion, the arbitration panel in the instant case did not ignore the subcontract-

**112**

ing provision in the contract as Folger claims. They quoted it and commented upon its meaning. The strong lesson of *Misco* is that even though arbitrators arguably misunderstood the language, that does not permit courts to vacate the arbitrator's determination. We conclude that the award draws its essence from the collective bargaining agreement. The decision of the district court was correct.

AFFIRMED.