**LOCKHEED AERONAUTICAL SYSTEMS COMPANY–GEORGIA, A DIVISION OF LOCKHEED CORPORATION, Plaintiff,**

v.

**AERONAUTICAL MACHINISTS LOCAL LODGE NO. 709, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Defendant.**

No. 1:91–CV–0054–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 25, 1991.

Duance C. Aldrich, Thomas H. Christopher, Kilpatrick & Cody, Atlanta, Ga., for plaintiff.

Robert S. Giolito, Stanford, Fagan & Giolito, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, Jr., District Judge.

This is an action to vacate an Opinion and Award of an arbitrator rendered pursuant to a collective bargaining agreement. Jurisdiction is vested with this Court pursuant to 29 U.S.C. § 185 and 28 U.S.C. §§ 1331 and 1337. The case is currently before the Court on both parties' Motions for Summary Judgment. The Court DENIES Plaintiff's Motion for Summary Judgment [16–1], and GRANTS Defendant's Motion for Summary Judgment [18–1].

## BACKGROUND

Plaintiff Lockheed Aeronautical Systems Company–Georgia, a Division of the Lockheed Corporation, is a Delaware corporation doing business within this district, and is an employer in an industry affecting commerce within the meaning of § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185 ("the LMRA"). Defendant Aeronautical Machinists Local Lodge No. 709, International Association of Machinists and Aerospace Workers, AFL–CIO, is a labor organization within the meaning of § 301 of the LMRA. Defendant, through its duly authorized officers and agents, is engaged in representing its employee members in matters affecting their wages, hours, and working conditions.

At all relevant times, Defendant served as the collective bargaining representative for certain employees of Plaintiff at Plaintiff's Marietta, Georgia manufacturing facility (the "unit employees"). Plaintiff and Defendant had in the past executed and been bound by various collective bargaining agreements, each agreement being of approximately three years' duration. In accordance with this system, commencing March 5, 1990, Plaintiff and Defendant were bound by the collective bargaining agreement (the "agreement") at issue in this lawsuit. That agreement purported to govern Plaintiff's relationship with the unit employees, and to remain effective through March 1, 1993.

Pursuant to Part B, Article I, Section 14 of the agreement, Plaintiff agreed not to subcontract, or contract out, maintenance work normally performed in house by members of the bargaining unit, except in four limited circumstances. Thus, the agreement presumably allowed Plaintiff to subcontract nonmaintenance work.

Sometime shortly after the March 4, 1990 ratification of the agreement, Plaintiff announced its intention to subcontract the processing of its insurance claims to Aetna, an outside insurance administrator, thus eliminating the previous system of in house claims processing. Because of the subcontract arrangement, several unit employees who had previously performed in house insurance claims processing were "surplused" as unneeded. Individual unit employees so affected by the subcontract filed grievances pursuant to the terms of the agreement, protesting both Plaintiff's plan to eliminate the in house processing of insurance claims, and Plaintiff's alleged plans to surplus the in house processors in May, 1990. Pursuant to the terms of the agreement, the grievances were submitted to arbitration.

Accordingly, an arbitrator was appointed on July 16, 1990, and an arbitration hearing was held on August 27 and 28, 1990. During the hearing the parties had the opportunity to present all relevant evidence, examine all witnesses, and argue their respective positions. As a result of this hearing, the arbitrator concluded that the record presented two issues to be decided in order to resolve the grievances under arbitration. Those two issues were, first, whether Plaintiff had the right, under the agreement, to transfer the work previously performed by in house claims processors to an

outside insurance carrier. As a second issue, the arbitrator would decide, if Plaintiff did have the right to subcontract, whether Plaintiff acted in good faith in subcontracting to Aetna the claims processing work, and if not, the appropriate remedy. *See* Opinion and Award dated December 28, 1990, attached as Exhibit D to Complaint, § I, p. 2.

In his Opinion and Award, the arbitrator found, first, that Plaintiff had the right, under the agreement, to subcontract its claims processing work to Aetna. However, the arbitrator also found that Plaintiff "acted in bad faith and violated the prior [collective bargaining] agreement [between Plaintiff and Defendant] when its accounting-finance personnel followed a scheme to discredit in house claims processing from early 1989 until March 1990." ("the bad faith scheme"). Opinion and Award, § VII. Apparently finding that it was this bad faith discrediting of in house claims processing that led to Plaintiff's eventual subcontracting of the work to Aetna under the current agreement, the arbitrator required Plaintiff to return the claims processing work contracted out to Aetna to its in house employees. Furthermore, the arbitrator required Plaintiff to adequately staff its in house claims processing department so as to meet a maximum allowable level of claims backlog, and further required Plaintiff to meet these backlog requirements by reinstating, with compensation for lost earnings, unit employees previously surplused due to Plaintiff's subcontract with Aetna. Finally, the arbitrator concluded that Plaintiff would be "entitled to contract out this work under the next agreement as long as no language is adopted restricting such action." *Id.*

On January 9, 1991, Plaintiff commenced this lawsuit, requesting that this Court vacate the arbitrator's Opinion and Award. In its Complaint, Plaintiff contends that, given the arbitrator's finding that Plaintiff has the right under the agreement to sub-

contract its claims processing work to Aetna, the arbitrator's subsequent finding that Plaintiff should reinstate its in house claims processing department impermissibly results from the arbitrator's "objection to the circumstances under which the [agreement] was negotiated." Complaint, pp. 4–5, ¶ 12. Plaintiff further contends that "[i]n rendering that portion of the Award other than the finding that Lockheed had the authority to subcontract the work at issue, the Arbitrator exceeded his jurisdiction and authority." Complaint, p. 5, ¶ 3.[1]

On January 29, 1991, Defendant filed its Answer and Counterclaim. In Counts II, III and IV of its Counterclaim, Defendant alleged Plaintiff's willful and aggravated breach of the collective bargaining agreement (Count II), fraud and misrepresentation in the making of the collective bargaining agreement (Count III), and wrongful interference with and impairment of the Union's duty and responsibility to represent the employees in the bargaining unit (Count IV). Answer and Counterclaim, pp. 10–12. In its Order dated June 18, 1991, this Court granted Plaintiff's Motion to Dismiss Counts II, III and IV of Defendant's Counterclaim. Thus, Plaintiff is left with only Count I of its Counterclaim. Therein, Defendant alleges that Plaintiff's "refusal to abide by the Arbitrator's Award constitutes a flagrant and unjustifiable breach of the collective bargaining agreement." Answer and Counterclaim, p. 9. Defendant requests in Count I of its Counterclaim that the Court uphold and enforce the Arbitrator's Award, and also requests attorney's fees and costs of this action. Currently, both parties have moved for summary judgment.

## DISCUSSION

I. Standard of Review for Summary Judgment

This Court will grant summary judgment when "there is no genuine issue as to any

---

1. The arbitrator specifically justified his consideration of allegations of bad faith on the fact that the parties in this case expressly contracted to act in good faith, and as a result, the arbitrator's consideration of bad faith involved merely the interpretation of the agreement, the task for which he was properly empowered and requested to perform. *See* Opinion and Award, § VI. Nevertheless, Plaintiff in this lawsuit apparently contends that the arbitrator impermissibly exceeded his jurisdiction and authority in considering Plaintiff's alleged bad faith conduct.

material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In cases where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Where, as here, the movant is the plaintiff, that party must demonstrate the absence of an issue of material fact with regard to *every* element essential to his or her claim. *Id.* The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* However, it is not enough in most situations for the movant merely to point out to the court this absence of evidence. *Id.* 477 U.S. at 323, 106 S.Ct. at 2552; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Rather, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552 (quoting Fed.R.Civ.P. 56(c)).

Only after the movant meets its initial burden does any obligation on the part of the nonmovant arise. *Id.; Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Clark*, 929 F.2d at 608. Nevertheless, once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Rollins*, 833 F.2d at 1528.

## II. Application

In seeking summary judgment in the instant case, Plaintiff argues that this Court should vacate the arbitrator's Opinion and Award, contending that in issuing his Opinion and Award, the arbitrator exceeded his authority and impermissibly "dispens[ed] his own brand of industrial justice." Brief in Support of Plaintiff Lockheed's Motion for Summary Judgment, p. 15. Defendant, in response to Plaintiff's Motion for Summary Judgment, and in support of its own Motion for Summary Judgment, contends that the arbitrator in issuing his Opinion and Award properly exercised that authority over the matter fully anticipated by the agreement to which both parties expressly consented.

In reviewing the decision of an arbitrator, this Court plays an extremely limited role. *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel & Car*

*Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l,* 861 F.2d 665, 669–70 (11th Cir.1988), *cert. denied,* 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989). In such cases, the Court may not review the merits of an award, even where there are allegations "that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). In *United Steelworkers v. American Mfg. Co.,* cited *supra,* the Supreme Court stated that "[t]he courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." 363 U.S. at 568, 80 S.Ct. at 1346. In *Delta,* cited *supra,* the Eleventh Circuit further stated:

> An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference. The offending arbitrator's award which properly results in our setting it aside must be so offensive that one is to be seen only rarely.

861 F.2d at 670. *See also, Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1278 (11th Cir.1982) (arbitrator's award upheld, regardless of the fact that the arbitrator's decision was contrary to the "superficially clear and unambiguous terms of the collective bargaining agreement"); *Local 636 Upholsterer's Int'l Union v. American Carpet Mills, Inc.,* 86 L.R.R.M. 2611, 2612, 1973 WL 982 (N.D.Ga.1973) (O'Kelley, J.) ("[S]o long as the arbitrator's decision concerns construction of the contract, the reviewing court has no business overruling that finding even though faced with the possibility of its own different analysis.").

The applicable test as enumerated by the Supreme Court is whether " 'the arbitrator's award draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice' ". *Id.* (quoting *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361). Courts in this Circuit strictly apply this test. *See Delta,* 861 F.2d at 667; *U.S. Postal Service v. Nat'l Ass'n of Letter Carriers,* 847 F.2d 775, 778 (11th Cir.1988); *Gen. Warehousemen and Helpers Local 767 v. Standard Brands, Inc.,* 579 F.2d 1282, 1292 (5th Cir. 1978), *cert. dismissed,* 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075; 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979). In *Int'l Union of District 50, Mine Workers of America v. Bowman Transp., Inc.,* 421 F.2d 934 (5th Cir.1970), the Court held that

> "a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop, may a reviewing court disturb the award."

*Id.* at 936 (quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969)). *See also, Loveless,* 681 F.2d at 1278–79 (arbitrator's award drew its essence from the contract where the award was based upon the arbitrator's perception of the intent of the parties). Thus, the Eleventh Circuit has specifically held that "[s]ubstantive review of an award is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." *Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers,* 726 F.2d 698, 699 (11th Cir.1984) (citing *Loveless,* 681 F.2d at 1276).

As Defendant correctly points out, this narrow standard of review is mandated by a strong public and congressional policy encouraging the peaceful resolution of labor disputes by means of binding arbitra-

tion. *See Butterkrust,* 726 F.2d at 699 ("Public policy favors arbitration as an alternative means of dispute resolution."). "In furtherance of that policy, the courts decline to review the merits of arbitration awards so that both employers and unions can be confident in obtaining the decision of the arbitrator for which they have bargained." *Kane Gas Light & Heating Co. v. Int'l Brotherhood of Firemen & Oilers,* 687 F.2d 673, 678 (3d Cir.1982), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1251, 75 L.Ed.2d 480 (1983) (citing *Enterprise,* 363 U.S. at 596–99, 80 S.Ct. at 1360–62). Indeed, " '[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.' " *Misco,* 484 U.S. at 36, 108 S.Ct. at 370 (quoting *Enterprise,* 363 U.S. at 596, 80 S.Ct. at 1360). According to the Court in *Loveless:*

> The exceedingly narrow scope of judicial review of labor arbitration decisions is tailored to suit the vital role that the arbitrator plays in the scheme of federal labor law. Not only is the arbitrator himself a linchpin of the ongoing collective bargaining relationship, the expeditiousness and the finality of the arbitration process serve to defuse the chronic crises that inhere in the labor setting and thereby prevent these crises from developing into labor unrest. *See United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578–81, 80 S.Ct. 1347, 1350–52, 4 L.Ed.2d 1409 (1960). To the extent that the courts intrude into this scheme, they detract both from the central role of the arbitrator and the palliative effect of the arbitration process. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598–99, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960).

681 F.2d at 1275.

■ In the instant case, the Court agrees with Defendant that the arbitrator, in issuing the Opinon and Award in question, did not exceed his authority, and indeed did not impermissibly "dispense his own brand of industrial justice." Rather, the Court finds that the Arbitrator's consideration of Plaintiff's alleged bad faith in acting pursuant to the agreement "draws its essence" from the agreement, and therefore constitutes a consideration well within the arbitrator's authority.

It is noteworthy that Plaintiff does not question the appropriateness of the arbitrator's first finding with regard to the permissibility of Plaintiff's subcontracting out its claims processing work. Rather, Plaintiff takes issue only with the arbitrator's finding with regard to the second designated issue, that is, whether the parties acted in good faith in subcontracting to Aetna the claims processing work, and if not, the appropriate remedy. In seeking summary judgment, Plaintiff contends that the arbitrator with regard to this finding: (1) exceeded his authority under the agreement in considering alleged bad faith conduct, a matter more properly submitted to the National Labor Relations Board; (2) impermissibly considered conduct allegedly falling under the terms of the *previous* agreement, rather than the current agreement under which he was empowered; and (3) impermissibly dispensed his own brand of industrial justice, penalizing Plaintiff in the process. The Court does not agree, for several reasons.

■ First, with regard to Plaintiff's argument that the arbitrator exceeded his authority under the agreement in considering Plaintiff's alleged bad faith conduct, as this Court has recognized numerous times before, "[t]he arbitrator specifically justified his consideration of allegations of bad faith on the fact that the parties in this case expressly contracted to act in good faith, and as a result, the arbitrator's consideration of bad faith involved merely the interpretation of the agreement, the task for which he was properly empowered and requested to perform." *Supra,* p. 5 n. 1; Court Order dated June 18, 1991, p. 5 n. 1 (citing Opinion and Award, § VI). Specifically, the arbitrator looked to Article I, § 4 of the agreement, which provides:

The Company and the Union agree that they will administer this Agreement in accordance with the true intent of its terms and provisions and will give each other fullest cooperation to the end that harmonious relations may be maintained in the interest of both the Company and the Union. It shall be the duty of the Company and its representatives and the Union and its representatives to comply with and abide by all the provisions of this Agreement....

Agreement, attached as Exhibit A to Complaint, p. 16. The arbitrator also looked to the preamble to the agreement, which further provides:

This agreement between the Company and the Union, evidences the *desire of* the parties hereto to promote and maintain harmonious relations between the Company and its employees, and the union as their representative.

Agreement, p. v. Looking to these provisions of the agreement, the arbitrator interpreted this language as imposing a "good faith" requirement on both Plaintiff and Defendant in their dealings under the agreement. In this regard, the arbitrator held:

The Company contends the issue of good faith conduct by the parties is irrelevant and beyond the jurisdiction of the parties. The parties, however, have contracted for good faith conduct. In their preamble the parties expressed their desire to promote and maintain harmonious relations. One can hardly imagine bad faith conduct as promoting harmonious relations.... Again, one can hardly imagine bad faith as a means for complying with this covenant.

Opinion and Award, p. 39. The arbitrator thus specifically justified his consideration

of Plaintiff's alleged bad faith conduct on the grounds that the parties had contractually agreed to "give each other fullest cooperation to the end that harmonious relations may be maintained". Opinion and Award, p. 39. The Court finds reasonable the arbitrator's finding that the parties essentially contracted to act in good faith. As a result, the arbitrator's consideration of Plaintiff's alleged bad faith indeed drew its essence from the agreement, and thus was properly within the arbitrator's authority as the final interpreter of the agreement.

■ Second, as regards Plaintiff's contention that the arbitrator impermissibly considered alleged bad faith conduct falling under the authority of the *previous* agreement, rather than the current agreement under which he was empowered, the Court agrees with Defendant that the arbitrator acted within his authority when he examined Plaintiff's conduct leading up to and during agreement negotiations in order to determine whether Plaintiff's conduct *occurring under the current, and empowering, agreement* was violative of the current agreement's good faith clause.[2] As Defendant admits, there is no question in the present case that the arbitrator examined Plaintiff's alleged bad faith conduct during the periods both before and after the execution of the current agreement. However, the Supreme Court realized the necessity of consideration of such prior transactions, stating that

testimony of prior or subsequent transactions, which for some reason are barred from forming the basis of a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny.

of the agreement. As Defendant furthermore correctly points out, the arbitrator concluded that Defendant was victimized by Plaintiff's "bad faith scheme" through March, 1990. *See* Opinion and Award, p. 33. Given the fact that the current agreement became effective on March 5, 1990, it is therefore clear that the arbitrator viewed the bad faith conduct on the part of Plaintiff as carrying forward into the current agreement.

**2.** Indeed, the Opinion and Award indicate that the arbitrator in fact considered pre-agreement conduct for this limited purpose only. On page 33 of the Opinion and Award, the arbitrator indicates that those earlier occurrences explained "why the parties did what they did at the time they did it." As Defendant correctly points out, this statement clearly shows that the arbitrator examined these pre-agreement actions for the limited purpose of examining the motive for the parties' conduct after ratification

*Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 705, 68 S.Ct. 793, 805, 92 L.Ed. 1010 (1948) (citing *Standard Oil Co. v. U.S.*, 221 U.S. 1, 46–47, 31 S.Ct. 502, 510–511, 55 L.Ed. 619 (1910); *U.S. v. Reading Co.*, 253 U.S. 26, 43–44, 40 S.Ct. 425, 427, 64 L.Ed. 760 (1920)). The Court thus agrees with Defendant that such consideration was proper and, in fact, necessary, to the arbitrator's analysis of the alleged bad faith conduct subsequent to the ratification of the current agreement.

▪ Third, as regards Plaintiff's argument that the arbitrator impermissibly dispensed his own brand of industrial justice, penalizing Plaintiff in the process, the Court likewise does not agree. This Court has already found that the alleged bad faith issue drew its essence from the agreement, and therefore fell properly within the decisionmaking power of the arbitrator pursuant to the terms of the agreement. Moreover, this Court has already found that the arbitrator's consideration of pre-agreement bad faith conduct, for the limited purpose of clarifying the nature of the post-agreement bad faith conduct complained of, was permissible, if not necessary, given the facts of this case. Thus, this Court finds that in considering Plaintiff's alleged bad faith conduct, the arbitrator acted within his proper power and authority.

It is noteworthy that Plaintiff argues extensively concerning the particular evidence relied upon by the arbitrator in finding the existence of a "bad faith scheme" conducted by Plaintiff. Specifically, Plaintiff argues that the arbitrator erred in considering such evidence. Plaintiff next proceeds to argue in its present Motion for Summary Judgment before this Court the validity of the specific evidence presented to the arbitrator in the arbitration hearing. However, as stated before, this Court in reviewing an arbitrator's Opinion and Award exercises a very limited scope of review. As a result, this Court's sole concern is whether the Opinion and Award in question is irrational, whether it draws its essence from the agreement, and whether the arbitrator in issuing the Opinion and Award exceeded his authority. It is there-fore not this Court's proper role to conduct a *de novo* review of specific evidence considered by the arbitrator in his examination of the issues, except to the extent that such evidence tends to reflect upon the rationality and appropriateness of the Opinion and Award itself. *See Kane*, 687 F.2d at 678 (" 'a court is precluded from overturning an award for [the arbitrator's] errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues.' ") (quoting *NF & M Corp. v. United Steelworkers of America*, 524 F.2d 756, 759 (3d Cir.1975)).

Moreover, the Court agrees with Defendant that the arbitrator's chosen remedy was permissible in the present case. The agreement itself contains no restricting language with regard to appropriate remedies. In fact, the agreement does not specifically address allowable remedies at all. In *Enterprise Corp.*, cited *supra*, the Supreme Court stated:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

363 U.S. at 597, 80 S.Ct. at 1361. The Court in *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949 (4th Cir.1971) explained the situation as follows:

> While a contract may contain provisions detailing what remedies should be applied to compensate for a particular breach, labor contracts, like other contracts, commonly do not. Part of what the parties bargain for when they include an arbitration provision in a labor agreement is the 'informed judgment' that the arbitrator can bring to bear on a grievance, especially as to the formulation of remedies. *United Steelworkers of*

*America v. Enterprise Wheel & Car Corp.*, 363 U.S. [at 597, 80 S.Ct. at 1361]. Therefore, we conclude that, although the agreement is silent as to remedies, the fashioning of an appropriate remedy is not an addition to the obligations imposed by the contract.

*Id.* at 956 (footnote omitted). *See also, Int'l Union of District 50, United Mine Workers of America v. Bowman Transp., Inc.*, 421 F.2d 934 (5th Cir.1970) (absent limiting language in the collective bargaining agreement, an arbitrator has the power and authority to fashion an appropriate remedy to resolve a grievance which has been properly submitted to him); *Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co.*, 415 F.2d 403, 412 (5th Cir. 1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970) (an arbitrator's chosen remedy should be set aside only "[i]f there is no rational way to explain the remedy handed down by the arbitrator as a logical means of furthering the aims of the contract, that is, if an award is 'without foundation in reason or fact' ").

■ In the instant case, having found that Plaintiff violated the agreement through its bad faith conduct, the arbitrator fashioned a very specific remedy. Acting pursuant to the "harmonious relations" language contained in the good faith provision of the agreement, which provision the arbitrator found Plaintiff to have violated, the arbitrator concluded that the appropriate remedy would put the parties back into "the same position they should have been in from early 1989 to March 1990", but for Plaintiff's bad faith conduct. Opinion and Award, p. 51. First, the arbitrator required Plaintiff to return all claims processing work previously subcontracted out to Aetna to its in house employees. Second, he ordered Plaintiff to recall with backpay the in house claims processors who were surplused as a result of the subcontract with Aetna. Finally, the arbitrator required Plaintiff to adequately staff and equip its in house claims processing department so as to maintain an average monthly backlog of claims not to "exceed 50% of the average monthly claims re-

ceived during the preceding twelve months." Opinion and Award, p. 50.

Regardless of Plaintiff's present complaints with regard to the perceived harshness of the arbitrator's chosen remedy, as well as Plaintiff's contention that such remedy is punitive in nature, the facts still remain that: (1) the arbitrator acted within his vested authority in examining the alleged bad faith conduct of Plaintiff; (2) the agreement under which the arbitrator acted placed no restrictions upon allowable remedies, and indeed did not specifically address contemplated remedies at all; and (3) given the agreement's lack of restriction on remedies, the arbitrator, as one who presumably is better educated and experienced in the field of labor disputes than is any reviewing court, is authorized and empowered to fashion that remedy which he deems appropriate. Given these facts, the Court finds that the arbitrator properly fashioned a specific remedy, and furthermore that Plaintiff's complaints of perceived harshness and punitiveness must be given little weight.

Thus, the Court concludes that the arbitrator, in examining Plaintiff's alleged bad faith conduct in violation of the agreement, acted within the scope of his authority. Furthermore, the Court finds that the arbitrator had the power and authority to fashion that remedy which he deemed appropriate. The Court agrees with Plaintiff's proposition that "an award is not required to be enforced which is arbitrary or capricious." Brief in Support of Plaintiff Lockheed's Motion for Summary Judgment, p. 14 (quoting *U.S. Postal Service*, cited *supra*, 847 F.2d at 778). However, the Court finds that in the present case, the arbitrator's Opinion and Award is neither arbitrary nor capricious. Rather, the Court finds that the Opinion and Award is not irrational, in fact draws its essence from the agreement, and does not exceed the scope of the arbitrator's authority, and thus satisfies the applicable test as set forth in *Butterkrust. See supra* pp. 1580–81. Due to its limited scope of review in such situations, this Court's inquiry ends here. Given the undisputed facts of this

case, the Court concludes that Defendant is entitled to "judgment as a matter of law", and therefore declines to vacate the arbitrator's Opinion and Award as requested by Plaintiff.

### CONCLUSION

The Court DENIES Plaintiff's Motion for Summary Judgment [16–1], and GRANTS Defendant's Motion for Summary Judgment [18–1].

So ORDERED.