INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, a labor organization, Plaintiffs,

v.

PAN AM WORLD SERVICES, INC., a Florida corporation, Defendant.

No. 86–221–CIV–ORL–19.

United States District Court,
M.D. Florida,
Orlando Division.

May 21, 1987.

---

Sarah Siskind Rogers, Robert A. Sugarman, Sugarman & Susskind, P.A., Miami, Fla., for plaintiffs.

James G. Brown, Richeson & Brown, Orlando, Fla., for defendant.

## ORDER

FAWSETT, District Judge.

This case comes before the Court on the cross-motions for Summary Judgment and the responses thereto filed by the parties in this action (Doc. Nos. 15, 16, 21, and 25). The Defendant has filed depositions and affidavits in support of its Motion for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment (Doc. Nos. 17, 18, 19, 20 and 26).

By its motion, the Plaintiff seeks a summary judgment confirming and enforcing a 1985 arbitration award of a tripartite Special Adjustment Board created pursuant to section 184 of the Railway Labor Act ("RLA"), 45 U.S.C. § 184. Defendant, on the other hand, seeks a summary judgment vacating the arbitration award pursuant to the provisions of section 153 of the RLA, 45 U.S.C. § 153, First (p) & (q). Both parties contend that there is no dispute as to any material issues of fact.

The facts of this case, as agreed to in the Pretrial Stipulation can be summarized as follows. The Defendant ("Employer") is a government contractor engaged in the business of providing clerical, security and other personnel to the United States Air Force at various facilities. The International Brotherhood of Teamsters ("IBT") has been the certified bargaining representative of the Employer's clerical and related employees since 1969. A second union, the United Plant Guard Workers of America ("UPGWA") is the certified bargaining representative of the Employer's security employees (or those employees "whose duties are preponderantly those of security."). (See Preamble to the UPGWA Agreement).

In April 1984, a dispute arose between the IBT and the Employer over the elimination of the position of Pass and Identification Clerk from the IBT bargaining unit. The duties of said job classification had been performed by members of the IBT unit since 1957. In 1984, the Employer modified the Pass and Identification Clerk job description, added the requirement that it be performed by "security officers," and assigned it to the UPGWA bargaining unit, recognizing the UPGWA as the bargaining representative of the affected employees. The IBT filed a grievance alleging that the Employer had violated the provisions of its collective bargaining agreement, seeking restoration of the work and backpay for the affected employees. The grievance was first submitted for bilateral arbitration before Arbitrator Kenneth Moffet, who refused to hear the case on the ground that the situation called for trilateral arbitration between the Employer, the IBT and the UPGWA pursuant to the jurisdictional dispute provision of the parties' collective bargaining agreement.

Pursuant to the Moffett award the parties proceeded to tripartite arbitration. The UPGWA was notified of the proceeding, and a tripartite panel was convened. The IBT, the UPGWA and the Company each designated two representative members and Arbitrator Mollie Bowers as Neutral Referee. The hearing was attended by representatives of all three parties. Testimony was taken and documentary evidence, including the collective bargaining agreements of each of the two unions, was admitted into the record. Each of the parties was afforded an opportunity to participate.

On July 10, 1985, the Board issued an award concluding that the Employer's assignment of the Pass and Identification classification to the UPGWA bargaining unit violated the IBT Agreement, that the restructuring of the job had not been *required* by the Air Force as the Employer contended. The Board found that the duties of the job after the change were virtually identical to the duties of the job before the change, and that notwithstanding that the employees in question now wore hats, badges and guns to work, and had received some training for emergencies, they were not "performing the duties of a Security Police Officer." The Award concluded, then, that the work in question continued to fall under the IBT contract rather than the UPGWA contract and that its assignment to the UPGWA bargaining unit violated the IBT Agreement. It directed the Employer to restore the work to the IBT bargaining unit, and denied the backpay remedy requested by the IBT as moot.

Because the Employer has failed to restore the work to the IBT bargaining unit, the IBT has brought this action to confirm and enforce the award of Arbitrator Bowers. The Employer, however, contends that the award should be vacated pursuant to section 153, First (q) of the RLA because it did not conform or confine itself to matters within the scope of the Board's jurisdiction.

The scope of judicial review of arbitration awards under the RLA is "among the narrowest known to the law." *Diamond v.* *Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970). The statute itself, at 45 U.S.C. Section 153, First (p) and (q) provides that adjustment board orders may not be set aside execpt for "failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

In the instant matter, the Employer's contention that the award should be vacated is based on the second ground set forth in the statute. The Employer argues that the award should be vacated for failure of the Arbitration Board to conform, or confine itself, to matters within the scope of its jurisdiction. The Eleventh Circuit has held that "this provision of section 153 is, in effect, a statutory codification of certain substantive grounds that would justify the vacation of an arbitration award in other areas of labor law." *Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1276 (11th Cir.1982) (citing *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 415 F.2d 403, 410 (5th Cir.1969), *cert. denied,* 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970)). The court went on to state that in this area of labor law, as in others, there are three interrelated grounds for substantive court review of arbitral awards:

1) Whether the award is irrational, i.e., actually and indisputably without foundation in reason or fact;

2) Whether the award draws its essence from the letter or purpose of the collective bargaining agreement; or

3) Whether the arbitrator conformed to a specific contractual limitation upon his authority.

*Loveless,* 681 F.2d 1272, 1276. See also *Air Line Pilots Association, International v. Eastern Air Lines, Inc.,* 632 F.2d 1321, 1323 (5th Cir.1980).

■ In determining whether to enforce an award, the reviewing court's function is to determine whether the essence of the award is based on the collective bargaining agreement. *International Assocation of*

*Machinists and Aerospace Workers, District 776 v. Texas Steel Company ("Texas Steel")*, 538 F.2d 1116 (5th Cir.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). "[W]e do not review the merits of the factual and legal accuracy of the arbiter's findings. The [contract] is to be interpreted expansively so as to uphold the award, rather than restrictively. *Id.* at 1121; *International Chemical Workers Union v. Day & Zimmerman, Inc.*, 791 F.2d 366, 369 (5th Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). All that is needed for an award to satisfy the substantive tests is that it "must, in some logical way, be derived from the wording or the purpose of the contract." *Texas Steel*, 538 F.2d at 1120.

Furthermore, an arbitral award may not be vacated just because a judge might have reached a different conclusion. *Loveless*, 681 F.2d at 1276. Courts will not review an award for ordinary error or substantive mistake going to the merits of a dispute, or even for arbitrariness or capriciousness. *Id.* (citing Senate Labor Committee rejection of language that would have permitted courts to vacate awards as "arbitrary or capricious.") Even where the reviewing court would have arrived at a different decision, an award may only be struck down where "the reasoning is so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." *Safeway Stores v. American Bakery and Confectionery Workers International Union, Local 111*, 390 F.2d 79, 82 (5th Cir.1968). Unless issues of fraud or corruption are raised, the only question a district court may ask is "whether the arbitrators did the job they were told to do— not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Railway Co.*, 768 F.2d 914, 921 (7th Cir. 1985).

█ Arbitrator Bowers, when making her award, was acting as part of a tripartite procedure established by the parties' collective bargaining agreement in accordance with the RLA. The jurisdiction and role of such boards has been made clear in the Supreme Court case of *Transportation–Communication Employees Union v. Union Pacific Railroad Co. ("T–C Employees Union")*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). In that case, the Court ordered the arbitration board:

"to resolve this entire dispute not only upon the contract between the railroad and the telegraphers, but 'in light of ... [contracts] between the railroad' and any other union 'involved' in the overall dispute, and upon consideration of 'evidence as to usage, practice and custom' pertinent to all these agreements."

385 U.S. at 165–166, 87 S.Ct. at 374 (quoting *Order of Railway Conductors v. Pitney*, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1946)). Thus, Boards of Adjustment in industries subject to the RLA are to resolve jurisdictional disputes by reference to the contracts of the unions involved and the custom and practice in the industry.

█ In addition to the Employer's argument that the award does not draw its "essence" from the collective bargaining agreement, the Employer contends that Arbitrator Bowers overstepped her authority because she did not consider the dispute in light of the contracts between both the IBT and the UPGWA. As evidence of this, the Employer points to the fact that Arbitrator Bowers framed the issue in dispute as follows:

"Did the Company violate the IBT Agreement when it abolished the job classification of Identification Clerk, represented by the IBT, and subsequently created a new, hybrid job classification for persons who also qualified as Security Police Officers and are represented by the UPGWA?

If so, what should the remedy be?"

(See Award, Exhibit A of the Complaint, at 4). The Employer claims that since the issue was based primarily in reference to the IBT agreement, Arbitrator Bowers did not exercise her authority in accordance with the principles enunciated in *T–C Employees Union, supra.*

However, the case of *T–C Employees Union* does not require that an arbitrator refrain from resolving a dispute by reference to the contract of the grieving union. The only constraint placed upon the arbitrator in such cases is that such determination be made "in light of" *both* union contracts. 385 U.S. at 166, 87 S.Ct. at 374. The award clearly reflects that the Special Adjustment Board, on which two UPGWA panelists participated, did consider the UPGWA contract. (See Award, Exhibit A to the Complaint, at 4, 5 & 7). Testimony was taken, and documentary evidence, including the collective bargaining agreements of each of the two unions, was admitted into the record. Each of the parties was afforded a full opportunity to examine and cross examine witnesses, and to submit evidence and briefs. (See Award, at 2). Furthermore, it is clear from the award that Arbitrator Bowers found that the employees under the new job classification were not "performing the duties of a Security Police Officer." (See Award, at 11). Because Arbitrator Bowers found that the duties of the job after the change were virtually identical to the duties of the job before the change, she found that the work in question continued to fall under the IBT contract rather than the UPGWA contract. Thus, it is clear that, because the work was not encompassed by the UPGWA agreement, Arbitrator Bowers framed the issue in light of and with reference to the IBT agreement.

Thus, under the *T–C Employees* analysis it is clear that the award draws its essence from the letter or purpose of the collective bargaining agreement and that the arbitrator did not overstep the contractual limitations of her authority. *See Loveless,* 681 F.2d at 1276.

█ Finally, the Employer asserts that the Award should be vacated because it is irrational and ambiguous. (See Page 13 of Defendant's Memorandum in Support of its Motion for Summary Judgment (Doc. No. 16)). The Defendant bases this argument on what it perceives to be a mistake of fact. However, as stated earlier, an ordinary substantive mistake going to the merits of a dispute decided in arbitration is not a proper subject of judicial review. *Wallace v. Civil Aeronautics Board,* 755 F.2d 861, 863 (11th Cir.1985); *Loveless,* 681 F.2d at 1276; *Northwest Airlines, Inc. v. Air Line Pilots Asso.,* 530 F.2d 1048 (D.C. Cir.), *cert. denied,* 426 U.S. 942, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976). Although Defendant contends that the mistake alleged here is "extraordinary" in some way, and that therefore the award should be vacated, it cites no authority for the proposition. The Defendant merely alleges that the arbitrator erred in construing the record with respect to the litigated facts. This type of error is not proper for review.

As far as Defendant's claim that the award is ambiguous, this Court does not agree. The arbitrator found that the work in question is IBT work, and directed it to restore the work to the IBT unit. Whether the employees, once their work is transferred back to the IBT, carry guns or wear badges is a decision to be made by the management of the Employer.

Even so, the Court has no authority to evaluate the Award on the merits, or to remand it because the Defendant views it as ambiguous. *Air Line Pilots Association, International v. Eastern Air Lines, Inc.,* 632 F.2d at 1323. Even ambiguity "which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Id.* at 1324.

Therefore, in accordance with this opinion, the Court makes the following rulings:

1. Plaintiff's Motion for Summary Judgment is hereby GRANTED.

2. Defendant's Motion for Summary Judgment is hereby DENIED.

3. The Arbitration award issued on July 10, 1985, by Arbitrator Bowers is hereby affirmed. The parties are ordered to comply with the terms of such award.

4. By this Order, Defendant's Motion to Amend its Witness List (Doc. No. 31) is rendered moot.