**BOSTON AND MAINE CORPORATION,**
Plaintiff–Appellant,

v.

**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES,**
Defendant–Appellee.

No. 95–2344.

United States Court of Appeals,
First Circuit.

Heard May 8, 1996.

Decided Aug. 30, 1996.

David A. Handzo, Washington, DC, with whom Daniel F. Driscoll, Smith, Elliott, Smith and Garmey, Saco, ME, John H. Broadley, Andrew J. McLaughlin and Jenner & Block, Washington, DC, were on brief, for appellant.

Richard S. Edelman, Washington, DC, with whom John O'B. Clarke, Jr., Donald F. Griffin, Melissa B. Kirgis and Highsaw, Mahoney & Clarke, P.C., were on brief, for appellee.

Before TORRUELLA, Chief Judge, CUMMINGS * and CYR, Circuit Judges.

TORRUELLA, Chief Judge.

Plaintiff–Appellant Boston & Maine Corporation (the "B & M") challenges the district court's denial of its motion for summary judgment and concurrent grant of summary judgment for Defendant–Appellee Brotherhood of Maintenance of Way Employees (the "BMWE"). The B & M had challenged the enforcement of certain of Public Law Board 4669's awards to the BMWE-affiliated claimants. The BMWE sought enforcement of the same awards, which the district court granted. We affirm the judgment of the district court.

## BACKGROUND

In March 1986, the BMWE-member employees exercised their right to self-help in a dispute with two carriers, the Maine Central Railroad Company (the "MEC") and the Portland Terminal (the "PT"). The MEC's and the PT's BMWE-represented employees asked the employees of the B & M to withhold their labor from the B & M to assist them in resolving their dispute. In April 1986, the B & M issued notices that jobs left vacant by sympathetic strikers would be permanently abolished, including the jobs left vacant by the claimants. On April 19, 1986, the B & M directed the striking employees to return to work by April 25, 1986, or their positions would be filled by permanent re-

* Of the Seventh Circuit, sitting by designation.

placements. The claimants did not return to work that April.

When the BMWE's strike against the MEC was halted on May 16, 1986, the claimants attempted to return to work. When they tried to return to work, they were informed that they were not entitled to return to work because they had forfeited their seniority by not complying with Rule 13 of the collective bargaining agreement ("the CBA"), which required that "[e]mployees laid off by reason of force reduction, desiring to retain their seniority rights, must, within ten (10) days from [the] date laid off, file their name and address, in writing, in triplicate, with their immediate supervising officer." The claimants were not permitted to return to work until sometime after July 23, 1986, when, by memorandum, the B & M restored their seniority in compliance with a permanent injunction granted by the district court in *Railway Labor Executives Ass'n v. Boston & Maine Corp.*, 639 F.Supp. 1092 (D.Me.), *aff'd in part and rev'd in part sub nom., Railway Labor Executives' Assoc. v. Boston & Maine Corp.*, 808 F.2d 150, 160 (1st Cir. 1986), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987). Although this court vacated the injunction against The B & M, holding that the dispute involving the BMWE employees was one pertaining to the interpretation or application of the CBA and was thus within the exclusive jurisdiction of the appropriate adjustment boards to resolve. However, at no time after this court vacated the injunction did the B & M rescind its July 23, 1986, memorandum restoring the claimants' seniority.

In accordance with the mandate of this court, the district court entered an order referring the contractual disputes concerning the B & M to "the National Railroad Adjustment Board or Public Law Board, whichever is applicable." As a result, on February 13, 1989, the BMWE and the B & M entered into an agreement to establish a Public Law Board pursuant to Section 3 Second of the Railway Labor Act (the "RLA"), 45 U.S.C. § 153 Second, to hear the 175 disputes at issue. In March 1989, the National Mediation Board (the "NMB") established Public Law Board 4669 to hear the disputes and

appointed Edwin H. Benn from the Board. On May 10, 1993, Referee Benn resigned as the neutral member of Public Law Board 4669. The BMWE and the B & M partisan members on the Board agreed to select Elizabeth C. Wesman as the neutral member to replace Referee Benn, and on August 3, 1993, she was duly appointed by the NMB.

With Wesman as the neutral member, Public Law Board 4669 heard five cases (Nos. 6, 7, 9, 10 and 11) and subsequently Wesman issued proposed awards in each of the five cases. Public Law Board sustained, in part, the claims in Awards 6, 7, 9 and 10—with the B & M partisan member dissenting—finding that the claimants had been erroneously deprived of their seniority by the B & M's actions. These four awards ordered the B & M to compensate the claimants in those cases with

> back pay for wages [each claimant] . . . would have earned, *but for* the erroneous removal of his seniority on May 19, 1986[,] for the interval between that date and the date of his assumption of the position to which he was properly entitled, following restoration of his seniority on July 23, 1986. [Claimants are] . . . also entitled to restoration of any vacation rights [they] . . . may have lost as a consequence of the erroneous removal of [their] . . . seniority.

The B & M has refused to pay the back pay ordered by the four awards (Nos. 6, 7, 9, and 10) of Public Law Board 4669. Instead, the B & M filed a motion for summary judgment with the district court seeking to have the awards set aside; in response, the BMWE filed a motion for summary judgment seeking to enforce these awards. The B & M now appeals the district court's denial of its motion, as well as the district court's decision to grant the BMWE's motion. Like the district court before us, we refer to Award No. 6 only, since it is the lead decision in this matter, the reasoning of which is incorporated in Awards Nos. 7, 9 and 10.

### STANDARD OF REVIEW

We examine a grant of summary judgment *de novo*, applying the same decisional standards as the district court. *Wyner v. North Am. Specialty Ins. Co.*, 78 F.3d

752, 754 (1st Cir.1996). As such, we must apply the normal standard by which courts review arbitration decisions pursuant to the RLA. *See Trial v. Atchison, Topeka & Santa Fe Ry.*, 896 F.2d 120, 123 (5th Cir.1990).

"Judicial review of an arbitration award is among the narrowest known in the law." *Maine Cent. R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir.1989). Under the RLA, an award by a Public Law Board can be set aside only if: (1) the Board failed to comply with the requirements of the RLA; (2) the Board exceeded its jurisdiction; or (3) the award was the product of fraud or corruption. 45 U.S.C. § 153 First (q). While the limited scope of judicial review "is not the equivalent to granting limitless power to the arbitrator," *Georgia–Pacific Corp. v. Local 27, United Paperworkers Intern. Union*, 864 F.2d 940, 944 (1st Cir.1988), "as a general proposition, an arbitrator's factual findings are not open to judicial challenge," *El Dorado Tech. Servs. v. Union General De Trabajadores de Puerto Rico*, 961 F.2d 317, 320 (1st Cir.1992). Where, as here, issues of fraud or corruption are not raised, we ask "whether the arbitrators did the job they were told to do—not whether they did it well, correctly, or reasonably, but simply whether they did it." *Brotherhood of Locomotive Eng'rs v. Atchison, Topeka and Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir.1985).

### DISCUSSION

In her revised Award, ultimately adopted by the Board, Referee Wesman concluded that because the First Circuit, in its December 22, 1986, decision, reversed the part of the district court's order that restored the seniority of the affected employees, but the B & M failed to retract its July 23, 1986, memorandum restoring such seniority, the issue of whether claimants were deprived of their seniority was "moot." Public Law Board No. 4669, Award No. 6, p. 10. The district court ordered the enforcement of Award No. 6 because it concluded that "the decision that it is not necessary to interpret the contract is a decision which is entitled to the same level of deference as a finding of contractual meaning." *Boston & Maine Corp. v. Brotherhood of Maintenance of Way Employees*, No. 94–321–P–C, 1995 WL 888609, slip. op. at 14 (D.Me.1995). The district court so concluded because it read the Award as "a legal decision based on factual determinations" to which "[c]ourts are bound to defer ... unless the arbitrator has manifestly disregarded the law." *Id.* at 15. The district court found no such manifest disregard.

On appeal, the B & M contends that, because the RLA directs that the role of a public law board is to interpret or apply the provisions of a collective bargaining agreement, and because the instant parties' agreement did not expand the Board's jurisdiction beyond that set by the RLA, by failing to interpret and apply the CBA in making her decision the Board exceeded its authority. The B & M buttresses this argument by claiming that the arbitrator's failure to interpret or apply the CBA violated this court's prior conclusion that the disputes in question required the interpretation or application of the CBA. *See Railway Labor Executives' Ass'n v. Boston and Maine Corp.*, 808 F.2d 150, 159 (1st Cir.1986), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987).[1]

As an initial matter we reject the contention that our previous opinion directed that the Board construe the CBA. The B & M points to a statement in our previous opinion that "[w]hether a party is in breach of a collective bargaining agreement ... 'requires the interpretation [and] application'" of that agreement. *Railway Executives' Assoc.*, 808 F.2d at 159 (quoting 45 U.S.C. § 153, First (1) (RLA)). However, there, we were responding to the district court's exercise of

---

1. We also reject the B & M's contention that the district court made a finding of fact that the arbitrator failed to interpret or apply the CBA. In review of RLA arbitration, the factual findings of the arbitral panel are "conclusive" upon the district court. 45 U.S.C. § 153 First(q). Thus, the district court was not obligated to make findings of fact for the purposes of Federal Rule of Civil Procedure 52(a), *see Makuc v. American Honda Motor Co.*, 835 F.2d 389, 394 (1st Cir.1987), and indeed, the district court properly noted that it lacked jurisdiction to review the factual findings of the panel, *Boston & Maine Corp. v. Brotherhood of Maintenance of Way Employees*, No. 94–321–P–C, 1995 WL 888609, slip op. at 17 (D.Me. November 9, 1995).

jurisdiction over an arbitrable "minor" dispute, which was not first litigated before an appropriate arbitration board—as the RLA directs. *See* 45 U.S.C. § 153, First (providing that arbitration of disputes over contract interpretation is compulsory). *See, e.g., Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 323, 92 S.Ct. 1562, 1564–65, 32 L.Ed.2d 95 (1972). Our statement regarding "interpretation" and "application" of the CBA is best read as distinguishing the job of an arbitration board under the RLA from the district court's proper exercise of its jurisdiction. In that light, our previous language cannot be construed as limiting the Board to interpreting the contract, rather than exercising the full authority afforded it by the parties.

We turn to the question of the proper scope of the arbitrator's authority. The B & M asks us to adopt the view that the Board's sole authority was to apply and interpret the provisions of the CBA that the parties brought before it, and that by dismissing the issue brought before it as moot, the Board exceeded that authority. We cannot accept such a restrictive reading of the scope of arbitration in this case. We have stated before that "once an issue has been committed to arbitration, both the CBA and the submission itself should be taken into account in determining the scope of the submission." *El Dorado Tech. Servs.,* 961 F.2d at 320. In *El Dorado Technical Services,* an employer argued that an arbitrator exceeded the scope of his authority by taking into account provisions other than the particular provision under which the union complained. *Id.* In response, we concluded that "[a]n arbitrator's view of the scope of the issue committed to his [or her] care is entitled to the same far-reaching respect and deference as is normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself." *Id.* at 321. As a result, we rejected as "bordering on the chimerical" the view that an arbitrator could exceed the scope of his authority by electing to consider the agreement in question as a whole. *Id.* We do so again here.

Similarly, B & M claims that the arbitrator failed to interpret the CBA in this case, in particular the CBA's Rule 13 governing the retention of seniority rights during furlough. The Board concluded that because B & M had restored these rights pursuant to the district court's ruling in 1986, and did not retract this restoration pursuant to the First Circuit's 1986 reversal, the issue of whether the B & M properly terminated employees' seniority is "moot." While the instant case differs from *El Dorado Technical Services* in that there the arbitrator's ruling was challenged on appeal for considering provisions of the CBA that were not submitted for arbitration for the parties, we think that *El Dorado Technical Services* at the very least directs that the Board's decision not to interpret Rule 13 cannot alone support the conclusion that the Board exceeded the scope of its authority, despite the fact that the parties' submission focused on Rule 13.

The parties' submission agreement in fact stated that the "Board shall have jurisdiction only of the claims and grievances" shown on an attached list containing the claimants' names that included the Rule 13–related issue of seniority. We conclude the Board's mootness ruling is a plausible interpretation of the "claims and grievances" language in the submission. We defer, per *El Dorado,* to the Board's conclusion that the "claims" consisted of *only* the question of *remedy,* since the B & M essentially conceded the question of *liability. Cf. Pack Concrete, Inc. v. Cunningham,* 866 F.2d 283, 285–86 (9th Cir.1989) ("deferring to the arbitrator's ruling that submitted 'seniority and recall' issue also allowed consideration of propriety of discharge").

What we are left with, then, is the question of whether an arbitrator's decision that the existing record does not present a justiciable controversy, in and of itself, oversteps the arbitrator's authority pursuant to the RLA. We conclude that the Board cannot seriously be considered to have overstepped its bounds, where, as here, the arbitrator's decision was grounded in B & M's allowance via its memorandum—prior to arbitration—of the remedy sought by employees. The Supreme Court has clarified that arbitration boards under the RLA are not restricted simply to the interpretation of the agreement

set before them. *Transportation–Communication Emp. Union v. Union Pac. R. Co.,* 385 U.S. 157, 165–66, 87 S.Ct. 369, 373–74, 17 L.Ed.2d 264 (1966). In fact, the Supreme Court has ordered arbitration boards "to resolve th[e] entire dispute not only upon the contract between the railroad and [employees], but 'in light of ... [contracts] between the railroad' and any other union 'involved' in the overall dispute, and upon consideration of 'evidence as to usage, practice and custom' pertinent to all these agreements." *Id.* (quoting *Order of Ry. Conductors v. Pitney,* 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1946)); *see also International Bhd. of Teamsters v. Pan Am World Servs., Inc.,* 675 F.Supp. 1319, 1322 (M.D.Fla.1987). In the instant case, the Board's decision was certainly made in light of the CBA, upon consideration of the current practice among B & M and the employees involved pertinent to the CBA. Specifically, because B & M had continue to afford its employees their "disputed" seniority while being free not to do so, the Board found moot the issue of whether the complaining employees could have complied with Rule 13 of the CBA, pursuant to which they lost their seniority.

 It is well settled that a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 495–96, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)), or alternatively, when the "party invoking federal court jurisdiction" no longer has "a personal stake in the outcome of the controversy." *Geraghty,* 445 U.S. at 397, 100 S.Ct. at 1209. An exception to the mootness doctrine exists where it appears that all issues in a case have been resolved, but the issues are "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). One might dispute whether the Board was correct as a legal matter in its determination that the matter in question was moot. However, for us to assess the merits of that determination would exceed our own role in reviewing an arbitrator's decision. We are constrained to ask only whether the Board's members "did the job they were told to do." *Brotherhood of Locomotive Eng'rs,* 768 F.2d at 921. That job was to resolve the dispute "in light of" the CBA and the relevant practice between the B & M and the complaining employees. The Board certainly did this job, in a manner that cannot even be characterized as arbitrary or capricious—a standard which would still not be adequately deferential to the Board's decision. *See Loveless v. Eastern Air Lines,* 681 F.2d 1272, 1276 (11th Cir.1982) (noting that the Senate Labor Committee rejected language that would have permitted courts to vacate arbitral awards under the RLA as "arbitrary or capricious"). Our inquiry ends there.

### CONCLUSION

As a result of the foregoing, the judgment of the district court is *affirmed.*