Brandon A. v. NHDOE                    CV-00-25-B     08/08/01
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Brandon A., by and through
his parent and next best friend,
David A., on behalf of himself and
all others similarly situated

        v.                                    Civil No. 00-025-B
                                              Opinion No. 2001 DNH 147
Nicholas Donahue, in his Official
Capacity as Commissioner of The New
Hampshire Department of Education


                      MEMORANDUM AND ORDER


        Brandon A. is a student with learning disabilities who is

entitled to a free and appropriate public education pursuant to

the Individuals with Disabilities Education Act ("IDEA"), 20

U.S.C. § 1400, et seq.  Brandon has brought a class action

complaint for declaratory and injunctive relief against the

Commissioner of the New Hampshire Department of Education

("NHDOE"), alleging that Brandon and his fellow class members

have been denied their right under the IDEA to a due process

hearing and a decision within 45 days after a request for a

hearing is filed with the NHDOE.  The Commissioner has moved to

dismiss the complaint alleging that Brandon did not have standing

when he filed suit and that his claim is moot because he received the hearing he requested.

## I.   BACKGROUND[1]

### A.   Brandon A.

Brandon is a fourteen year-old educationally disabled student in the Epsom School District (the "School District").  He is currently attending the Wreath School, a residential educational facility in Pike, New Hampshire.

On July 1, 1999, Brandon's father requested a due process hearing challenging the School District's refusal to provide Brandon with an extended school-year program in a therapeutic setting.  He also alleged that the School District failed to identify Brandon as "seriously emotionally disturbed" and to create an individualized education program ("IEP") that addressed his emotional disability.

In response to the request, the NHDOE assigned Attorney Siff to conduct a mediation session with the parties on July 22, 1999, and to preside at their hearing on August 16, 1999.  The parties

---

[1]   Except where noted, I take the facts from the Second Amended Complaint, Doc. No. 44, and the parties' briefs.

-2-

unsuccessfully attempted mediation on two occasions. Because Attorney Siff conducted the mediation sessions, he recused himself from sitting as the hearing officer.

On July 30, 1999, Attorney John Lebrun notified the parties that he would preside as the hearing officer. At that time, Lebrun scheduled a prehearing conference for August 20, 1999, thereby canceling the August 16, 1999 hearing.

In a letter dated July 30, 1999, the School District requested that Brandon's father sign a release covering any and all records and oral information in the possession of various psychiatric hospitals, counseling services, and other organizations that provided services to Brandon. Brandon's father objected to the School District's request.

At the prehearing conference on August 20, 1999, the School District filed a motion to compel Brandon's father to sign the release. Brandon's father countered with a motion for a protective order arguing that the records were not essential because the issues he had raised could be resolved based on the records in Brandon's existing educational file. He further objected to signing the release on the grounds that such broad

-3-

discovery would frustrate the IDEA's requirement that a hearing be concluded and a final decision rendered within 45 days of the receipt of a request for a hearing.

At the August 20, 1999 prehearing conference, the hearing officer recused himself because he had previously represented Brandon in an involuntary emergency admission proceeding. The NHDOE reassigned the case to Hearing Officer Jeanne Kincaid ("Officer Kincaid"). On August 26, 1999, the parties resubmitted their motions regarding discovery.

At the second prehearing conference held on September 2, 1999, Officer Kincaid informed the parties that if Brandon's father did not sign the release, she would consider issuing an order compelling him to do so. Over Brandon's father's objection, Officer Kincaid also granted an extension of the 45-day requirement for issuing a decision because of the change in hearing officers and the need to secure documentation from outside agencies.

On September 10, 1999, Officer Kincaid issued a "Discovery Order" requiring Brandon's father to sign the release. When he did not comply with the discovery request, Officer Kincaid dismissed the case without prejudice.

Brandon's father then filed suit in this Court, pursuant to the IDEA, 20 U.S.C. § 1415(i)(2), appealing Officer Kincaid's decision requiring that he sign a release and dismissing Brandon's case. He also brought a claim on behalf of his son and all others similarly situated, pursuant to 42 U.S.C. § 1983, to enforce their right to a timely impartial due process hearing and decision under the IDEA, 20 U.S.C. § 1415(f).

After a hearing in this court on October 26, 2000, the parties agreed that the court should remand Brandon's individual claims to Officer Kincaid. Officer Kincaid held a two-day hearing on December 19 and 22, 2000, and issued a decision on January 2, 2001. She awarded Brandon three months of compensatory education and ordered the School District to revise its evaluation and meeting procedures to comply with recent amendments to the IDEA.

Brandon filed a second amended complaint on November 22, 2000, alleging that the NHDOE's system of hearings denies students their right to a timely impartial due process hearing and corresponding decision under the IDEA, 20 U.S.C. § 1415(f).

B.    **Class Allegations**

From 1989 to 1999, the NHDOE received about 80 requests per

year for due process hearings.[2]  Of the 80 requests, a decision was issued in an average of 15.82 cases per year.  The remaining cases settled, were resolved through mediation, or were withdrawn.  Since 1989, only 11 out of the 171 hearings conducted were decided within 45 days.  Furthermore, in 96 out of the 171 hearings held since 1989, the hearing officers took over 100 days to conclude the hearing and reach a decision.

In addition, in 1994, the Office of Special Education Programs determined that the NHDOE was not complying with the 45-day requirement.  See Tr. of Oral Argument, Oct. 26, 2000, Doc. No. 41, at 44.  A due process hearing is considered to be in compliance when the hearing and decision is rendered within the 45-day limit or when the hearing officer provides a written order specifically granting a party's request for an extension to the 45-day limit.  Id. at 42.

The NHDOE allegedly causes delays in the hearing process by assigning hearing officers to cases in a way that increases the possibility of conflicts and scheduling difficulties.  The NHDOE

---

[2]  To put the number of requests in context, there are approximately 30,000 students receiving special education services in New Hampshire.

also allows hearing officers to schedule hearings according to openings in their private practice schedules. The hearing officers also allegedly perpetuate these delays by not limiting the number of witnesses or the scope of the evidence at a hearing, by granting continuances without requiring a party to show good cause, and by permitting school districts to engage in broad discovery that often requires the extension of a hearing beyond 45 days. The NHDOE has not promulgated rules addressing discovery in due process hearings. Thus, discovery is governed by the New Hampshire Department of Justice Model Rules, which allow parties to seek any information that is "necessary for a full and fair presentation of the evidence at the hearing." Epsom Sch. Dist.'s Decision Mem., Doc. No. 21, App. I at 12.

## II. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) challenges the statutory or constitutional power of the court to adjudicate a particular case. 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[1] (3d ed. 1997). The party seeking to invoke the court's

jurisdiction bears the burden of establishing by competent proof that jurisdiction exists.  See Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995).  The court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.  See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).  "[The] plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law."  Id. (internal quotation marks omitted).  When ruling on a Rule 12(b)(1) motion, the court may consider whatever evidence has been submitted in the case, including affidavits and exhibits.  See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996). I apply this standard in resolving the Commissioner's motion to dismiss.

Before considering the parties' arguments, however, I first provide an overview of the IDEA's requirements.

## III.  **THE IDEA**

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services

designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). A disabled child's right to a free and appropriate public education is assured by the development and implementation of an individualized education program ("IEP"). See Honig v. Doe, 484 U.S. 305, 311-12 (1988). An IEP must contain both a statement of the child's "present levels of educational performance" and "a statement of the special education and related services and supplementary aids and services to be provided to the child." 20 U.S.C. § 1414(d)(1)(A)(i), (iii). IEP's must be revised not less than annually. See id. § 1414(d)(4)(A)(i).

The IDEA also provides children with disabilities and their parents with a number of important procedural safeguards. See id. § 1415(a). A disabled child's parents must be included as part of the team that develops and reviews a child's IEP. See id. § 1414(d)(1)(B)(i). Parents are also entitled to examine all records relating to the child; to participate in meetings concerning the child's educational placement; to obtain an independent educational evaluation of the child; to receive written notice of any proposal to alter or to refuse to alter the child's educational placement; and to present complaints with

respect to _any_ matter relating to the identification, evaluation or educational placement of the child. See _id._ § 1415(b).

Children with disabilities and their parents also have the right to an impartial due process hearing before a state educational agency. See _id._ § 1415(f). In addition, the agency "shall ensure that not later than 45 days after the receipt of a request for a hearing-- (1) A final decision is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties." 34 C.F.R. § 300.511(a) (2000). Although this requirement is not absolute, adherence to the requirement is intended to be the rule rather than the exception. "The legislative history, statutory terms, and regulatory framework of the IDEA all emphasize promptness as an indispensable element of the statutory scheme ... because children develop quickly and their needs often change substantially from year to year." _Amann v. Town of Stow_, 991 F.2d 929, 932 (1st Cir. 1993) (internal quotation marks and citations omitted). Therefore, the prompt disposition of disputes concerning a disabled child's educational placement or IEP is necessary for the resolution to "serve any substantively useful purpose." _Id._ (quoting _Bow Sch. Dist. v. Quentin W._, 750 F. Supp. 546, 550 (D.N.H. 1990)). The New

Hampshire regulations, therefore, allow a hearing officer to grant specific extensions of time beyond the 45 days for specific periods of time only at the request of either party and for good cause shown.  See N.H. Code Admin. R. Ed. 1128.10(b) (1998); 34 C.F.R. § 300.511(c).

## IV.  DISCUSSION

The Commissioner argues that Brandon did not have standing when he filed suit, and, in the alternative, that his claims are now moot because he received a decision from Officer Kincaid.[3]  I begin by discussing whether Brandon had standing when he filed suit.  I then consider the merits of the Commissioner's argument that Brandon's claims are now moot.

---

[3]  The Commissioner also argues that this case is not justiciable because Brandon failed to exhaust certain state administrative remedies.  This argument lacks merit for two reasons.  First, the Supreme Court held in Patsy v. Board of Regents of Florida, 457 U.S. 496 (1982), that exhaustion of state administrative remedies is not a prerequisite to bringing an action pursuant to 42 U.S.C. § 1983.  Id. at 516.  Second, Brandon exhausted the only administrative procedure required under the IDEA, the due process hearing.  See 20 U.S.C. § 1415(l); Weber v. Cranston Sch. Comm., 212 F.3d 41, 49-50, 53 (1st Cir. 2000).

## A.  Standing

Both constitutional and prudential considerations potentially constrain a plaintiff's standing to sue in federal court.  Bennett v. Spear, 520 U.S. 154, 162 (1997).  The constitutional aspect derives from the requirement that federal courts can hear only a justiciable case or controversy.  U.S. Const. art. III.  The "irreducible constitutional minimum of standing" consists of three requirements: (i) the plaintiff must have suffered an "injury in fact;" (ii) the cause of the alleged injury must be "fairly . . . traceable" to the defendant; and (iii) the injury must be "redress[able] by a favorable decision."  Bennett, 520 U.S. at 167 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

To satisfy the Constitution's injury-in-fact requirement, a plaintiff must demonstrate the deprivation of a: (i) "legally protected interest," (ii) that is "concrete" and "particularized" in the sense that the alleged injury must affect the plaintiff in a "personal and individual way," and that is (iii) either "actual" or "imminent."  Defenders of Wildlife, 504 U.S. at 560-61 & n.1.  Where, as here, a plaintiff seeks prospective relief, past exposure to illegal conduct will not suffice to show

imminent harm.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983) (quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974)).  Rather, in order to establish imminence, a plaintiff must allege facts showing that the "injury is certainly impending," <u>Adarand Constructors, Inc. v. Pena</u>, 515 U.S. 200, 211 (1995) (quoting <u>Defenders of Wildlife</u>, 504 U.S. at 565 n.2) (internal quotation marks omitted), such that there is "a sufficient likelihood that he will again be wronged," <u>Lyons</u>, 461 U.S. at 111; <u>see</u> <u>Berner v. Delahanty</u>, 129 F.3d 20, 24 (1st Cir. 1997).

The plaintiff bears the burden of satisfying these requirements.  <u>See</u> <u>Berner</u>, 129 F.3d at 24.  He must provide factual allegations, either direct or inferential, concerning each of the standing requirements.  <u>See</u> <u>DuBois v. United States Dep't of Agric.</u>, 102 F.3d 1273, 1281 (1st Cir. 1996).  "At the pleading stage, [however,] general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." <u>Id.</u> at 1281-82 (internal quotation marks and citations omitted).

Brandon's complaint satisfies the constitutional requirements of standing. He has alleged a sufficient injury in fact because he claims that he was denied his alleged right under the IDEA to a hearing and a decision from the NHDOE within 45 days. His alleged injury is fairly traceable to the Commissioner because Brandon claims that he was denied a timely hearing pursuant to NHDOE policy rather than the whim of a single hearing officer. Finally, his claimed injury was redressable when he filed suit because I could have ordered the Commissioner to give Brandon the hearing he sought.

To the extent that the Commissioner also argues that Brandon lacks standing because he asserts only a generalized grievance, I also reject this argument. Brandon sued because he was denied his right to a prompt resolution of his dispute with the school district. His particularized injury does not become a generalized grievance merely because other disabled students also were denied a prompt resolution of their IDEA disputes. Accordingly, I reject the Commissioner's standing claims.

B. **Mootness**

The fact that a plaintiff may have standing to sue when suit is commenced does not end the inquiry. "Under Article III of the

Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) (citing Deakins v. Monaghan, 484 U.S. 193, 199 (1988)). Furthermore, Article III's "case-or-controversy requirement subsists through all stages" of litigation. Id. Thus, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

In Arizonans for Official English, the Supreme Court described the mootness doctrine as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." 520 U.S. at 68 n.22 (internal quotation marks and citations omitted). Consequently, "throughout [the course of] the litigation, [a] plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477). When "the party invoking federal court jurisdiction no longer has a personal stake in the

outcome of the controversy," a once justiciable controversy becomes moot and the court loses subject matter jurisdiction to consider the matter further. Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997) (quoting Boston and Maine Corp. v. Bhd. of Maint. of Way Employees, 94 F.3d 15, 20 (1st Cir. 1996)). The party arguing that a claim is moot, however, bears the heavy burden of establishing mootness. See 15 Moore et al., supra, § 101.101.

In this case, Officer Kincaid resolved Brandon's claims concerning the educational services he is entitled to under the IDEA. She held a due process hearing and issued an order on January 2, 2001, awarding Brandon three months of compensatory education and ordering the School District to revise its evaluation and meeting procedures to comply with recent amendments to the IDEA. See Def.'s Mot. to Dismiss, Doc. No. 45, at Exh. A. Brandon has not appealed Officer Kincaid's decision. Accordingly, the Commissioner argues that Brandon's claims are moot because he received the hearing he sought.

Brandon, in turn, argues that his claim is saved by an exception to the mootness doctrine that applies when a defendant voluntarily ceases its illegal conduct before a court can rule on

-16-

the merits of the case.  See <u>Northeastern Fla. Chapter of Assoc.</u>
<u>Gen. Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656,
661 (1993); <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S.
283, 289 (1982).  In a case such as this, where a defendant
voluntarily accords the plaintiff the relief he seeks after suit
has been commenced, the defendant's cessation of its allegedly
illegal activity will not moot the case unless "it is absolutely
clear that the allegedly wrongful behavior could not reasonably
be expected to recur."  <u>Friends of the Earth, Inc. v. Laidlaw</u>
<u>Envtl. Servs., Inc.</u>, 528 U.S. 167, 190 (2000).

I agree that this case fits comfortably within the voluntary
cessation of illegal activity exception to the mootness doctrine.
If the Commissioner had not voluntarily agreed to give Brandon a
hearing on his challenge after suit was brought, he would still
be waiting for relief from this Court.  Further, I cannot say on
the present record that it is absolutely clear that Brandon and
other disabled students could not face a wait of more than 45
days before receiving a future decision from the NHDOE if I were
to dismiss this case as moot.  Accordingly, I reject the
Commissioner's mootness argument.

## V.  CONCLUSION

I deny the Commissioner's motion to dismiss, (Doc. No. 45) because I find that Brandon's claims remain justiciable.

SO ORDERED.

$$\overline{\hspace{3cm}}$$
Paul Barbadoro
Chief Judge

August  8, 2001

cc:  Nancy J. Smith, Esq.
     Ronald K. Lospennato, Esq.
     Diane M. McCormack, Esq.
     John F. Teague, Esq.